[Crim. No. 6203.    Second Dist., Div. Three.    Sept. 26, 1958.]

THE PEOPLE, Appellant, v. JOHNNIE LEE CANTLEY, Respondent.

Edmund G. Brown, Attorney General, William E. James, Deputy Attorney General, William B. McKesson, District Attorney (Los Angeles), Jere J. Sullivan, Lewis Watnick and Robert Lederman, Deputy District Attorneys, for Appellant.

No appearance for Respondent.

VALLÉE, J.—Appeal by the People from an order setting aside the information on the ground defendant had been committed without reasonable or probable cause. (Pen. Code, § 995.)

The information charged that on November 5, 1957, defendant did unlawfully own and have in his possession and under his custody and control a .38 caliber revolver capable of

being concealed on the person and having a barrel less than 12 inches in length, and that defendant had theretofore, on November 15, 1940, been convicted of a felony by the United States District Court of the Western District of Arkansas in violation of section 12021 of the Penal Code.

Penal Code, section 12021, provides that any person who has been convicted of a felony under the laws of the United States "who owns or has in his possession or under his custody or control any pistol, revolver, or other firearm capable of being concealed upon the person is guilty of a public offense."

Mix Lewis, a police officer of the city of Los Angeles, testified at the preliminary hearing as follows: about 10:45 p. m. on November 5, 1957, he, in company with another police officer, saw defendant get out of his automobile in front of 1401 Santee Street in Los Angeles, enter an apartment house, stay two or three minutes, return and get into his car, make a U-turn on Santee and head north from 14th Street on Santee; he and the other police officer were in a police vehicle; about 100 feet south of Pico Boulevard he had defendant pull his car over to the curb;[1] as defendant pulled over to the curb he "saw the defendant reach—as if reaching under the seat— front seat of the vehicle"; defendant got out of his car, walked back toward the police car, and said "What did I do wrong, Officer?"; he asked defendant his name and where he was coming from; defendant said "his name was Cantley and that he had just been over to 14th and Santee to see a friend of his by the name of John Benson"; he asked defendant what he put underneath the front seat of his car; defendant said, "Nothing"; he had learned from a police report of a robbery and murder which occurred on November 2 at 4173 South Harvard in Los Angeles; the police report described the suspect as "Approximately five eight or nine, 170 to 180 pounds; male negro, dark complected; wearing a dark jacket and light pants"; at the time defendant said "Nothing," he (the officer) believed defendant had committed a felony—the robbery and murder at 4173 South Harvard; he then opened the car door on the driver's side, flashed a flashlight in the car, and saw a revolver lying on the floorboard on the driver's side; he took possession of the revolver; it had six live rounds of ammunition in the cylinder; defendant said he got the gun from a John Benson about three months before, he loaned the man $13 on the gun, he needed the money and had gone to see

---

[1] Pico Boulevard is between Twelfth and Fourteenth Streets.

if he could get the money for the gun at 1402 Santee, that Benson was not at home so he was leaving.

The revolver, introduced in evidence at the preliminary hearing, was capable of being concealed on the person. Proof was made that defendant had been convicted of a felony on November 15, 1940, in the District Court of the United States for the Western District of Arkansas.

■ "On a motion to set aside an information, the question of the guilt or innocence of the defendant is not before the court, nor does the issue concern the quantum of evidence necessary to sustain a judgment of conviction. The court is only to determine whether the magistrate, acting as a man of ordinary caution or prudence, could conscientiously entertain a reasonable suspicion that a public offense had been committed in which the defendant had participated. [Citation.] ■ A court may not substitute its judgment as to the weight of the evidence for that of the magistrate. If there is some evidence to support the information, the courts will not inquire into its sufficiency. ■ Under section 995 of the Penal Code, the information will be set aside only where there is no evidence that a crime has been committed or there is no evidence to connect the defendant with a crime shown to have been committed." (*People* v. *Platt,* 124 Cal.App.2d 123, 131 [268 P.2d 529].)

■ Reasonable cause to believe a person had committed a felony is such a state of facts as would lead a man of ordinary care and prudence to believe, or entertain an honest and strong suspicion, that the person is guilty of a felony. (*People* v. *Moore,* 141 Cal.App.2d 87, 89 [296 P.2d 91].) ■ In determining whether an arresting officer had probable cause to believe a person had committed a felony and therefore was justified in placing him under arrest, the court looks only at the facts and circumstances presented to the officer at the time he was required to act. (*People* v. *Paul,* 147 Cal.App.2d 609, 619 [305 P.2d 996].)

The court in *People* v. *Borbon,* 146 Cal.App.2d 315, stated (p. 319 [303 P.2d 560]) :

"In the instant case the arresting officers received an all-points bulletin regarding the robbery and describing the suspect. Based on the information received, they had reasonable grounds to stop defendants' car and question them as suspects. From the observation of appellant, dressed as he was, being a Mexican of his age, fitting the description of the suspect, rid-

ing in a car fairly well described, and observing the five receipts on the front seat of the car which were taken from the victim, the arrest of the suspects and search of them and the car were justified." (Also see *People* v. *Romero,* 156 Cal. App.2d 48, 49 [318 P.2d 835].)

In *People* v. *Jiminez,* 143 Cal.App.2d 671, it is said (p. 673 [300 P.2d 68]):

"The officers had a right to interrogate persons on the streets in the nighttime. (*People* v. *Simon,* 45 Cal.2d 645, 650 [290 P.2d 531].) When, as they approached defendants to perform this lawful duty, they saw the Balazs movement, they were justified in thinking it likely that he had a weapon. If the proposition holds true that search is not justified by its results, the converse holds true that a search based on appearances is not rendered unlawful by the fact that the contraband actually on hand was not that which reasonably was thought to be present.

"The case of *People* v. *Blodgett,* 46 Cal.2d 114 [293 P.2d 57], is very much in point. Officers saw a cab parked in front of a hotel at 3 a. m., a man and woman in the back seat. The officers ordered them out, and saw one of them withdraw his hand from the juncture of the seat and back cushion. The officer removed the seat and found three marijuana cigarettes. The furtive action of defendant was held to have given reasonable grounds for belief that he was hiding contraband. His act was similar to that of Balazs in the present case, but the present case is somewhat stronger for the People because the ordering of the occupants out of the car in the Blodgett case was before, and in this case after, the furtive motion. It is a natural impulse on confrontation to hide immediately any contraband, and one cannot be heard to complain that he, or a companion, has betrayed the presence of illegal goods by the alacrity with which he attempted to conceal them. Likewise, as was said in *People* v. *Martin,* 46 Cal.2d 106 [293 P.2d 52], the officers in making the investigation had a right to protect themselves, as by ordering the men out."

In *People* v. *Sanson,* 156 Cal.App.2d 250 [319 P.2d 422], it was held that where police officers, who had reasonable grounds for stopping an automobile being driven "very slowly" at an early morning hour with defective lights, noticed that the defendants appeared to be hiding something under the front seat, it was proper for one officer, after the defendants got out of the car, to look under the front seat, and on discovering a dirty paper bag, to examine its contents;

and that marijuana thus discovered was found as the result of a reasonable search.

About 10:45 at night Officer Lewis and his partner saw defendant making a U-turn. They had a right to interrogate him. They drove their car alongside that of defendant and identified themselves as police officers. As defendant pulled over to the curb he was observed making a furtive movement: reaching under the front seat of the car. Prior to that time the officers had learned of a robbery and murder in which they had a description of a suspect. It could be inferred that defendant fitted the description. The magistrate saw defendant, had an opportunity to compare him with the description, and could conclude that the officers had reasonable cause at the time of the arrest to believe defendant had committed a felony. We think the magistrate was justified in concluding that the officers acted reasonably in light of the information they had received in connection with what they observed, and that he was warranted in concluding they entertained a reasonable suspicion defendant had committed a felony, that they had reasonable cause to arrest defendant and, as an incident to the arrest, were entitled to search defendant's car.

The order is reversed.

Wood (Parker), Acting P. J., concurred.