[Crim. No. 6520. Second Dist., Div. Three. June 8, 1959.]

THE PEOPLE, Respondent, v. FRANK McMURRAY, Appellant.

William H. Neblett for Appellant.

Stanley Mosk, Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Respondent.

VALLÉE, J.—In a nonjury trial defendant was convicted of possessing heroin. (Health & Saf. Code, § 11500.) He was sentenced to state prison. He appeals from the judgment and the order denying his motion for a new trial. In support of his appeal he makes and variously repeats a number of contentions which, on analysis, come down to two: that the court erred to his prejudice in not compelling disclosure of the identity of an informer, and that his arrest was unlawful and consequently the evidence is insufficient to sustain the judgment.

Officer Burkland of the Los Angeles Police Department, attached to the narcotics division, had known defendant (not personally) for several years prior to the arrest. Defendant owned a rooming house at 615 Stanford Avenue in Los Angeles. Burkland had "put forth" many hours trying to catch defendant in possession of narcotics. He had been told by several informers that defendant was "a rather large dope peddler" and that he was dealing in dope from the Stanford Avenue address. On many, many occasions within two years before the arrest, from the street and from a vantage point in some of the hotels in the vicinity he had observed addicts approach defendant, an apparent exchange of something would take place, defendant would disappear from view, come out, the addict would receive something, and leave. On one occasion when Burkland approached an addict the latter swallowed what appeared to be a white paper bindle. Persons known to Burkland as addicts and informers who had contacted defendant at the Stanford Avenue address had told Burkland that defendant "was dealing in narcotics from this location, that he was peddling to various addicts that came to this location, and that usually the transaction went on quite fast, and they would, after paying him the money, pick their narcotics up and leave by either the front or the back." Burkland testified: "Q. Did you ever try to effect an arrest? A. I did, sir. Q. On information of these informers? A. I have. Q. Did you ever try to arrest McMurray? A. I tried it on several occasions. As a matter of fact, we thought we had some buys on him, but it later proved to be, as I recall it—— it fell into the purview or the Lawrence deci-

sion, and we were not able to use it. . . . Q. You indicated that on some occasion you sought to effect an arrest of the defendant but due to the Lawrence situation, you did not. What were the circumstances, sir, of that? A. As I recall, to the best of my recollection, it was an informant buy. We didn't use the case because it would tend to reveal the identity of the informant. Q. As a result of that did you secure some type of narcotic from the informant? A. As I recall, yes, we did. Q. Do you recall what kind it was? A. I believe it was heroin.'' The rooming house was torn down in the latter part of 1957 or early 1958.

About 6:30 or 7 p.m. on April 9, 1958, an informer who went to Burkland's office at the latter's request told Burkland, Lieutenant Colwell, and Sergeant Guindon that defendant was a peddler of narcotics, usually peddling in half ounce and ounce quantities; that defendant usually made his deliveries in the late afternoon or early evening on Fourth Avenue between Twenty-fifth Street and Adams Boulevard in Los Angeles; that defendant usually dressed in khakis and a black cap. The informer also told Burkland defendant was to make a delivery to him (the informer) of half an ounce of heroin on Fourth Avenue north of Adams; that he would make a telephone call. At that time defendant lived at 2135 Fifth Avenue, Los Angeles.

Burkland gathered together a group of six other officers, including Colwell, Guindon, and Officer Leeds, briefed them with all the information he had about defendant, and proceeded with them to the area given by the informer. Leeds had heard that defendant was a large narcotic dealer, that he lived at 2135 Fifth Avenue, and that he usually made his deals in that general area. About a mile before reaching the area, the informer telephoned purportedly to defendant from a public telephone. Burkland did not see what number the informer dialed; he listened to what the informer said. The informer asked for ''half a chicken or half a rabbit or something like that.'' Burkland could not recall whether the informer used any names. All he could hear was the informer's voice. The informer did not go farther with the officers; he was not at the scene of the arrest. Burkland had no other information about defendant's making deliveries on Fourth Avenue other than what the informer gave him. He had received information from the informer before but had not made an arrest from it. The information he had re-

ceived in the past had been checked and found to be accurate.

When the officers reached the area designated by the informer, they staked out. Officer Leeds concealed himself in the front yard of the second house from the corner about 75 to 100 yards south of Twenty-fifth Street on the west side of Fourth Avenue. Leeds observed defendant when he (defendant) was at the corner under a light. He recognized defendant from the physical description he had been given at the police station by Burkland and the way he understood he was to be dressed. He had also seen a photograph of defendant. Defendant walked down the street. After defendant passed by, Leeds ran across the grass to the sidewalk. As he did so, defendant turned around. Leeds ran toward him, got about five feet from him and hollered, "Police officers." Defendant was facing Leeds when the latter said "Police officers." Leeds had his "ID" badge and card and a flashlight in his hand. Defendant turned around, started to run, and threw away an object. Leeds had his flashlight on the object "when it left his [defendant's] hand before it touched the ground." As defendant started to run, Leeds grabbed him, and said "You're under arrest." The other officers then appeared. The object defendant threw away came to rest under a parked automobile. There was nothing else in the vicinity of the object. It contained heroin.

On the way to the police station Burkland showed defendant the object and asked him if that was all the heroin he had. Defendant said, "Yes, that's all there is." Burkland asked him if he had any more at the house. Defendant said, "No, you've got it all." Defendant made the same statements to Burkland at the police station. The officers did not have a warrant for defendant's arrest or a search warrant.

Defendant denied he had heroin in his possession, denied he threw the object, and denied he received the alleged telephone call.

At the time the People were presenting Burkland's testimony for the purpose of showing reasonable cause for the arrest, defendant, on cross-examination, asked Burkland the name of the informer. The officer claimed the privilege (Code Civ. Proc., § 1881, subd. 5) and the court sustained the objection. Defendant made it clear to the trial court and to the district attorney that he was relying on the refusal to identify the informer to establish the illegality of the arrest. (See *Coy* v. *Superior Court,* 51 Cal.2d 471, 473 [334 P.2d 569]; *Priestly* v. *Superior Court,* 50 Cal.2d 812, 819 [330 P.2d 39]; *People*

v. *Robinson,* 166 Cal.App.2d 416, 422 [333 P.2d 120] ; *People* v. *Chatman,* 166 Cal.App.2d 627, 631-633 [332 P.2d 374].)

 Disclosure is required where the informer participated in the crime with which the defendant is charged; where he took no part in the crime but was an eyewitness; where the informer's communication was the only justification for the action of the police and the informer did nothing more than give the police information leading to an arrest made without a warrant and alleged to have been unlawful; where, in view of the evidence, the informer would be a material witness on the issue of guilt and nondisclosure of his identity would deprive the defendant of a fair trial. On the other hand, where the arrest is valid apart from the information received from the informer, the latter's identity need not be revealed. (*Priestly* v. *Superior Court,* 50 Cal.2d 812 [330 P.2d 39] ; *People* v. *Williams,* 51 Cal.2d 355, 358-359 [333 P.2d 19].) In other words, it is not necessary to reveal the identity of an informer who merely points the finger of suspicion at a defendant and an arrest follows which is based on reasonable cause other than the information received from the informer. (*People* v. *Amado,* 167 Cal.App.2d 345, 347-348 [344 P.2d 254] ; *People* v. *Smith,* 166 Cal.App.2d 302, 306-307 [333 P.2d 208].)

 In the case at hand the informer did not participate in the crime. He was not an eyewitness. He was not present at the arrest and took no part other than to furnish information to the police and purportedly telephone to defendant. His communication was not the only justification for the action of the police. He did nothing more than give the police information which, together with the other information the police had, led to defendant's arrest. The identity of the informer was not necessary to establish reasonable cause for the arrest. There was sufficient evidence apart from the informer's communication to the police and his telephone call. There is nothing in the record to indicate the informer would have been a material witness on the issue of guilt—whether defendant was in possession of heroin at the time of the arrest. And there is nothing in the record to indicate that any information might have been elicited from the informer which would be relevant or helpful to the defense of defendant. (*Cf. People* v. *Amado,* 167 Cal.App.2d 345 [334 P.2d 254].)

The People did not rely on the telephone call made by the informer to show justification for the arrest. The evidence

with respect to the telephone call was elicited from Burkland on cross-examination. Thus, *People* v. *McShann*, 50 Cal.2d 802 [330 P.2d 33], relied on by defendant, is without application. In McShann the court stated (p. 809):

''The prosecution could have relied solely on the testimony of the officers as to defendant's possession of heroin and as to his admissions without reference to the telephone call. They chose instead also to introduce evidence of the telephone call, which substantiated the testimony of Officers Goodrum and Reppas and discredited defendant's. . . .

'' [P. 810.] Although the informer in the present case was not an eyewitness to the crime, as John Doe was in the Roviaro case, the prosecution's own election to introduce evidence of the telephone conversation made it imperative that it disclose the identity of the informer, for he alone could amplify or contradict the testimony of the officers.''

▪ A peace officer may make an arrest without a warrant when he has reasonable cause for believing the person arrested to have committed a felony. (Pen. Code, § 836; *People* v. *Smith*, 50 Cal.2d 149, 151 [323 P.2d 435].) ▪ An arrest without a warrant is not unreasonable if the officer has reasonable cause to believe a person is carrying contraband. (*People* v. *Gale*, 46 Cal.2d 253, 255 [294 P.2d 13].) ▪ Reasonable cause is a suspicion founded on circumstances sufficiently strong to warrant a reasonable man in the belief that the charge is true. (*People* v. *Brite*, 9 Cal.2d 666, 687 [72 P.2d 122].) ▪ Reasonable cause to justify an arrest may consist of information obtained from others and is not limited to evidence that would be admissible at the trial of the issue of guilt. (*Willson* v. *Superior Court*, 46 Cal.2d 291, 294 [294 P.2d 36].)

Over a period of two years Burkland had witnessed transactions between narcotic addicts and informers on the one hand and defendant on the other, from which a reasonable inference could be drawn that defendant was trafficking in narcotics. When Burkland approached one of the persons who had made an exchange with defendant, the person swallowed what appeared to be a white paper bindle. During the same period, addicts and informers had told Burkland defendant was a peddler of narcotics. On one occasion an actual ''buy'' of narcotics had been made from defendant through an informer, but to avoid identifying the informer the matter was not brought to court. Burkland communicated to the other officers, including Leeds, all the information he had gathered

about defendant. Leeds had heard that defendant was a large narcotics dealer, that he lived at the address where he in fact lived, and that he usually made his deals in that general area.

When Leeds was going across the grass toward defendant, the latter turned around facing Leeds. When Leeds hollered "Police officers," defendant threw an object away and started to run. ■ When a person who is approached by an officer engages in furtive conduct the officer may well be justified in apprehending him in view of the officer's prior information and his knowledge of the person's background. (*People* v. *Cantley*, 163 Cal.App.2d 762, 767 [329 P.2d 993]; *People* v. *Amado*, 167 Cal.App.2d 345, 346-347 [334 P.2d 254]; *People* v. *White*, 167 Cal.App.2d 794, 797-798 [334 P.2d 963]; *People* v. *Steinberg*, 148 Cal.App.2d 855, 858-861 [307 P.2d 634].) ■ The facts known to the police apart from the information received from the informer the night of the arrest were enough to create a suspicion founded on circumstances sufficiently strong to warrant a reasonable man in the belief that the charge was true. (*People* v. *Gorg*, 157 Cal.App. 2d 515, 520 [321 P.2d 143].) Officer Leeds had reasonable cause to believe defendant was committing a public offense and the arrest was not unreasonable. (See *People* v. *Richardson*, 51 Cal.2d 445 [334 P.2d 573].)

■ During the argument with respect to disclosure of the identity of the informer the court made this statement: "THE COURT: There is another thing too and that is this, that as a trial Court that this Court would adopt a certain policy. In the event that there was some case which either held squarely, or from which it might be inferred that under facts such as we have here, that the informant was participating, then certainly the Court would be governed by that decision. However, if there are no cases directly in point, this Court doesn't feel that the People should be precluded from the privilege of at least putting on their case, and in the event of a decision adverse to the defendant, the defendant's rights would be fully protected on appeal, while the People would be in no position whatsoever to avail themselves of any error on the part of the Court on this legal question should the Court be wrong. That is a factor that the Court would also take into consideration in ruling on this legal question. Do you follow me?" Defendant asserts prejudicial error. Basing a ruling on the admissibility of evidence on the fact that the defendant had a right of appeal and that the People did not

have such right was highly improper and erroneous. If an objection to the admission of evidence is legally well taken it should be sustained; if it is not legally well taken it should be overruled. However, since the court correctly ruled that identity of the informer was not required, there was no prejudice.

It is manifest from what we have said that the judgment is amply supported by the evidence.

The judgment and the order denying a new trial are affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.

A petition for a rehearing was denied July 6, 1959, and appellant's petition for a hearing by the Supreme Court was denied August 5, 1959. Peters, J., was of the opinion that the petition should be granted.