[Crim. No. 3604.   First Dist., Div. One.   Sept. 28, 1959.]

THE PEOPLE, Respondent, v. RICHARD L. POOLE, Appellant.

Milton M. Wood, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, Clarence A. Linn, Chief Assistant Attorney General, and Arlo E. Smith, Deputy Attorney General, for Respondent.

BRAY, P. J.—Defendant appeals from his conviction by the court, after waiver of a jury, of the crime of violation of section 11500, Health and Safety Code (possession of heroin).*

## QUESTIONS PRESENTED

1. Was the arrest without a warrant illegal?
2. Was there an illegal search and seizure?

## EVIDENCE

The cause was submitted to the court upon the transcript of the preliminary hearing. Sunday, November 17, 1957, Officers Higgins, Schaumleffel and Fogarty, all in uniform, were on their way to their beats in a private car driven by Fogarty. Higgins observed defendant walking along a street. He had arrested defendant for vagrancy some five months previously. At that time, Higgins had learned that defendant was on parole from a narcotics conviction.

Higgins desired to know if defendant was off parole, employed, and where he lived. Fogarty made a U-turn and stopped the car. Higgins got out some 25 feet behind defendant. Fogarty then drove on about a car length past defendant and parked the car. Schaumleffel then got out of the automobile and called defendant.

Higgins testified that, after appearing to look in the direction of Fogarty and Schaumleffel, defendant turned and walked towards Higgins. As he did, he made a rapid motion with his left hand toward his mouth. Higgins then approached defendant and asked some questions, but defendant would not open his mouth. Higgins noticed a piece of cellophane protruding from defendant's lips and said "If you have narcotics, spit it out in my hand." Defendant thereupon spit out a packet into Higgins' hand which was placed under defendant's chin. Defendant was then placed under arrest. The packet contained heroin.

Fogarty testified that Higgins told him that he wanted to talk to defendant and that he had turned around and stopped the car as testified to by Higgins. After Schaumleffel got out of the auto, the latter called to defendant who made a motion to his mouth with his left hand and turned around towards the approaching Higgins. As Fogarty approached Higgins and defendant, Higgins was asking questions. Fogarty could see that defendant had an object in his mouth

---

*The court also found defendant to have suffered two prior convictions of violations of the same section, which convictions defendant had denied. The second prior conviction was later dismissed.

and heard Higgins tell him to "spit it out or he was liable to get hurt." At that point defendant spit out the packet. Under cross-examination Fogarty testified that either Higgins or Schaumleffel might have had hold of defendant's arms, but he was not sure. Schaumleffel did not testify.

Defendant testified that he was walking down the street when he heard someone call "Poole." When he looked around, he saw Higgins. Then two officers "jumped down a little bit in front of me and then another one, he came up from some where and then they grabbed me and went to tussling with me." One officer wanted to hit him. Defendant had narcotics in his mouth and they "took it out of me" by forcing his mouth open, and Higgins reaching in with his finger and removing it. There was no warrant for defendant's arrest.

### 1. *Was the Arrest Illegal?*

■ No. Higgins was justified in believing that defendant was committing a felony, viz., had possession of a narcotic. Higgins knew that defendant was a parolee, and desired to interview him. Upon seeing the other officers defendant turned from them and made a quick movement of his hand to his mouth. Higgins was aware of defendant's prior narcotic convictions. Defendant's furtive movement of hand to mouth and the cellophane protruding from his mouth justified the officers, in view of defendant's background, in believing that defendant had a narcotic in it. Added to this was defendant's failure to answer the officer's questions. Then defendant spit out a packet which the officer by reason of his experience reasonably believed to contain a narcotic. ■ A police officer may make an arrest when he has reasonable cause to believe the person arrested to have committed a felony. It is his duty to do so. (Pen. Code, § 836; *People* v. *Smith* (1958), 50 Cal.2d 149, 151 [323 P.2d 435] ; *People* v. *Boyles* (1955), 45 Cal.2d 652, 655 [290 P.2d 535].) ■ Reasonable cause is a suspicion founded on circumstances sufficiently strong to warrant a reasonable man in the belief that the charge is true. Such circumstances existed here. (*People* v. *Brite* (1937), 9 Cal.2d 666, 687 [72 P.2d 122].) There was nothing in the evidence to warrant defendant's contention that the approach of the officers constituted a restraint upon defendant prior to defendant's furtive action, nor to show that the officers' approach to defendant was for any purpose other than for questioning.

■ When a person approached by an officer engages in furtive conduct, the officer may be justified in arresting him

in view of the officer's knowledge of the person's background. (*People* v. *McMurray* (1959), 171 Cal.App.2d 178, 185 [340 P.2d 335]; *People* v. *Cantley* (1958), 163 Cal.App.2d 762, 767 [329 P.2d 993].) ■ An arrest without a warrant is not unreasonable if the officer has reasonable cause to believe a person is carrying contraband. (*People* v. *McMurray, supra,* 171 Cal.App.2d 178, 184.) In *People* v. *Rodriguez* (1956), 140 Cal.App.2d 865 [296 P.2d 38], the defendant, whom the officers did not know, started to walk towards them, hesitated and then came on. He appeared nervous, so one of the officers started to question him. The officer noticed that the defend-. ant's eyes were "pin pointed and reddish" akin to those on a person under the influence of alcoholic or narcotics. The officers were about to let him go, when they noticed a piece of newspaper protruding from the defendant's trouser cuff in such a way as to resemble, in the officer's opinion, a bindle of narcotics. The court held (p. 869): "When all of the foregoing facts and circumstances are considered together, they impress us as authorizing a lawful detention of appellant based upon 'reasonable cause,' and the search, as an incident to that arrest, was therefore reasonable and justified the admission of the evidence obtained as a result of the search."

Defendant argues that the officers' purpose in stopping defendant was to arrest him rather than just to talk to him. There is no evidence justifying that conclusion. The circumstances here were entirely different from those in *People* v. *Harvey* (1956), 142 Cal.App.2d 728 [299 P.2d 310], and *People* v. *Goodo* (1956), 147 Cal.App.2d 7 [304 P.2d 776]. Harvey's arrest was unlawful because his actions were innocent ones that "any law-abiding citizen should be able to engage in without fear of search or arrest." (P. 731.) Also the police approached Harvey with the intention to arrest him. Neither of these circumstances appear in our case. In Goodo, the only circumstance upon which the arrest was based was the fact that the defendant was carrying a brown paper bag (as to which no incriminating significance could reasonably be attached) plus information given by an unknown informer.

■ Higgins testified that he had no intention of arresting defendant, that he merely intended to ask him if he was still on parole from the narcotics conviction of which Higgins had learned when he had arrested defendant for vagrancy. He also wanted to know where defendant lived and if he was employed. There was nothing unreasonable in a police officer

under these circumstances accosting defendant for these purposes. In *People* v. *Michael,* 45 Cal.2d 751 [290 P.2d 852], where police officers went to the defendant's home without a warrant, were admitted by the defendant's mother, and asked her if there were any narcotics in the house, the court said : ". . . it is not unreasonable for officers to seek interviews with suspects or witnesses or to call upon them at their homes for such purposes." (P. 754.) The fact that if defendant were still on parole (the evidence fails to disclose whether he was or was not), in nowise prevented a police officer from questioning him. Nor was this a situation such as was discussed in *People* v. *Hen Chin,* 145 Cal.App.2d 583, 585 [303 P.2d 18] (footnote) of the arrest of a person merely because he was a parolee. No arrest was made until after defendant's furtive movement upon being approached by the officers, his placing the cellophane packet in his mouth and his spitting it out on request.

2. *Search and Seizure.*

It is doubtful if there was a search. Higgins testified that defendant spit out the narcotic at his request. Fogarty testified that Higgins told defendant he was liable to get hurt if he did not spit out what he had in his mouth. Defendant testified that Officer Higgins forced his mouth open and pulled the narcotic out with his fingers. The court probably accepted the officers' version. The "threat" was a use of only such force as was reasonably necessary to procure the narcotics from defendant's mouth. Similarly, even the holding of defendant's arms would not constitute an unreasonable use of force, nor, taking defendant's version, would forcing open of his mouth and removing the narcotic therefrom constitute an unreasonable use of force. A reasonable search may be made incidental to a lawful arrest. (*People* v. *Brown* (1955), 45 Cal.2d 640, 643 [290 P.2d 528].) If the officer was justified in making the arrest, it is immaterial that the search and seizure preceded the arrest. (*Willson* v. *Superior Court* (1956), 46 Cal.2d 291, 294 [294 P.2d 36].)

In *People* v. *Martinez* (1954), 130 Cal.App.2d 54 [278 P.2d 26], the officers threw the defendant to the ground and choked him until he spit out the narcotic. Based upon the decision in *Rochin* v. *California,* 342 U.S. 165 [72 S.Ct. 205, 96 L.Ed. 183, 25 A.L.R.2d 1396] where after unsuccessfully choking Rochin to force him to disgorge the narcotic capsules, they took him to the emergency hospital, strapped him down and gave him an emetic which caused him to disgorge the

capsules, the court held the use of "brutal force for the extraction of evidence from the person of an accused" (p. 58) violated due process. None of these circumstances was present in our case. The facts of our case are similar to those in *People* v. *Dawson* (1954), 127 Cal.App.2d 375 [273 P.2d 938], where, as the court said in the Martinez case, distinguishing the Dawson case from it, "the officer 'merely put his arm around defendant's neck to hold him.' Defendant spat out the substance when told to do so. And the court there said there was 'a total absence of any showing of brutal or shocking force used against defendant.' " (P. 57.)

In *People* v. *Woods* (1956), 139 Cal.App.2d 515 [293 P.2d 901], the defendant was forced to submit to a finger probe of the rectum by a doctor. The court held that there was a "fundamental difference between this case and the facts found in the Rochin and Martinez cases" and held that the actions of the officers and doctor were not so brutal or shocking that they offended the due process clause of the Constitution.

The search, if any, and seizure in our case were reasonable and incident to a lawful arrest.

The judgment is affirmed.

Wood (Fred B.), J., and Tobriner, J., concurred.