[Crim. No. 7115.   Second Dist., Div. Three.   Aug. 15, 1960.]

THE PEOPLE, Appellant, v. FRANK GREEN, Respondent.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, William B. McKesson, District Attorney, Harry Wood and Robert J. Lord, Deputy District Attorneys, for Appellant.

Al Matthews for Respondent.

FORD, J.—The People have appealed from an order of the superior court which set aside the information charging the crime of possession of heroin (Health & Saf. Code, § 11500) pursuant to the motion of the defendant. The motion was made under the provision of section 995 of the Penal Code that the information must be set aside, on the motion of the defendant, by the court in which he is arraigned when the defendant has been committed without reasonable or probable cause.

The evidence as set forth in the reporter's transcript of the preliminary examination will be summarized. It was stipulated that a certain forensic chemist would be deemed to have been called as a witness and to have expressed his opinion that two capsules contained heroin. D. J. Collier, a police officer, testified that on November 16, 1959, at about 1:30 to 1:45 p. m. he saw the defendant at Avenue 20 and North Main Street in Los Angeles. When he first saw him, the defendant "was slouched down in the front seat of a 1948 Dodge Coupé." The automobile was being driven by Robert Patterson. The officer had known the defendant and Patterson. He knew that Patterson was "a known narcotic user." He had also known the defendant to be "a known narcotic user. Both automobiles were moving, the officer's car being "eastbound on North Main Street" and the other car being "westbound on North Main Street." He testified that "the defendant slid down into the seat to where only the top of his head could be seen," just after Patterson looked at the officer. The officers in the police vehicle then overtook the other car and "pulled it to the curb" as it made a right hand turn in a northerly direction on Avenue 20. The officers stopped Patterson and Green "for interrogation." The witness and his partner got out of their automobile. The witness approached the other vehicle on the driver's side while his partner approached on the passenger's side. In looking in the automobile, the officers saw one capsule laying on top of the defendant's right wrist. After they had Patterson and the defendant leave the car and while the latter were standing on the sidewalk, the witness noticed the other capsule "stuck

to the shirt'' of Green. The defendant appeared to be "under the influence of something.'' He said that Patterson did not know anything about the capsules and that there were five but that he must have swallowed the other three. On cross-examination, the officer testified that he had no warrant for the arrest of either Patterson or Green. He said that when he approached the car, he could "hardly see the top of his [defendant's] head through the side of the doorway.'' As to the capsule on the defendant's wrist, he testified: "It was moist, and the gelatin was sticking to the hair on his wrist.'' As to the reason for stopping the car, the officer testified: "One reason was I had just previously arrested Robert Patterson approximately one week sooner on narcotics, and I wanted to question him as to why he was out of jail; and the second reason was that the defendant had slid down into the bottom of the seat.'' Those were his only reasons.

The capsules were the ones concerning which the stipulation as to the opinion of the forensic chemist was made.

In his brief, the respondent concedes that if the stopping of the automobile was proper, "then that which was presented to the officer's senses would justify his subsequent actions.''

A defendant has been held to answer at the preliminary examination without reasonable or probable cause if his commitment is based entirely on incompetent evidence. (*Rogers* v. *Superior Court*, 46 Cal.2d 3, 7 [291 P.2d 929].)

The evidence before the magistrate bearing upon the issue of the admissibility of a physical object taken from a defendant by an officer may be in conflict or susceptible of conflicting inferences. In the face of such a conflict, the superior court in ruling on a motion to set aside the information may not be in a position to make a final determination as to the admissibility of such evidence. If there is any substantial evidence to support the admission of such physical object, the information should not be set aside on the ground that essential evidence was illegally obtained. (See *Badillo* v. *Superior Court*, 46 Cal.2d 269, 272 [294 P.2d 23].) In such a case, the ultimate decision on admissibility can be made at the trial on the basis of all of the evidence bearing on the issue.

We turn, then, to the question of whether there was substantial evidence to support the conclusion reached at the time of the preliminary examination that the capsules of heroin had not been illegally obtained from the defendant by the police. "In considering the question of reasonable or probable cause for action by the police, the court

looks to the facts and circumstances presented to the officer at the time he was required to act." (*People* v. *Jackson,* 164 Cal.App.2d 759, 761 [331 P.2d 63].) Officer Collier knew that both the defendant and Patterson were users of narcotics. He had arrested Patterson on a charge involving narcotics approximately a week before. Immediately after Patterson looked at the officer, the "defendant slid down into the seat to where only the top of his head could be seen."

This court stated in *People* v. *McMurray,* 171 Cal.App. 2d 178, at page 185 [340 P.2d 335] : "When a person who is approached by an officer engages in furtive conduct the officer may well be justified in apprehending him in view of the officer's prior information and his knowledge of the person's background." (See also *People* v. *Poole,* 174 Cal.App.2d 57, 60-61 [344 P.2d 30] ; *People* v. *Taylor,* 174 Cal.App.2d 448, 451-452 [344 P.2d 837] ; *People* v. *Hollins,* 173 Cal.App.2d 88, 93 [343 P.2d 174].) There was no reason for the officers to assume that offenses involving narcotics do not occur in broad daylight. The furtive act of the defendant, in view of his past history and that of Patterson as known to Officer Collier, was of a character which substantially differed from the neutral nature of the conduct found in *People* v. *Brown,* 45 Cal.2d 640 [290 P.2d 528], *People* v. *Simon,* 45 Cal.2d 645 [290 P.2d 531], *Gascon* v. *Superior Court,* 169 Cal.App.2d 356 [337 P.2d 201], *People* v. *Goodo,* 147 Cal.App.2d 7 [304 P.2d 776], and *People* v. *Harvey,* 142 Cal.App.2d 728 [299 P.2d 310]. Language used in *People* v. *Dore,* 146 Cal.App.2d 541 [304 P.2d 103], seems particularly appropriate here. This court there said, at page 544 : "We do not doubt that the actions of defendant, as related, were such as to engender in the minds of the officers a reasonable belief that defendant was probably engaged in some violation of law and that it was their duty to make an investigation. The facts speak for themselves. The factual situation developed in cases of claimed unlawful searches and arrests are of infinite variety but they are all weighed in the same scales."

The order is reversed.

Shinn, P. J., and Vallée, J., concurred.

A petition for a rehearing was denied September 12, 1960, and respondent's petition for a hearing by the Supreme Court was denied October 13, 1960. Peters, J., was of the opinion that the petition should be granted.