[Crim. No. 7388.   Second Dist., Div. One.   Mar. 6, 1961.]

THE PEOPLE, Respondent, v. ALFREDO GARCIA
SANCHEZ, Appellant.

Ellery E. Cuff, Public Defender (Los Angeles), Wilbur F. Littlefield and James L. McCormick, Deputy Public Defenders, for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Respondent.

LILLIE, J.—Defendant was charged with possession of heroin in violation of section 11500, Health and Safety Code, and a prior conviction under the same section. He pleaded not

guilty and denied the prior, waived his right to a trial by jury, and submitted the cause on the transcript of the preliminary examination. After hearing additional evidence the trial court adjudged defendant guilty, found the prior conviction to be true, denied his motion for new trial and application for probation, and sentenced him to the state prison.

Officer Garrahan, a police officer of fourteen years' experience and assigned to the narcotics division for seven and one-half years, testified that the area of Third and Broadway is one of high narcotic activity in which he previously had made many arrests. Before April 18, 1960, he had seen the defendant in connection with narcotics "somewhere," but couldn't remember where; on that day around 2:30 p. m., Officer Garrahan seated with his partner, Sergeant Barber, in a police car, recognized defendant standing on the corner of Third and Broadway with one Hastey, whom he knew to be a user of narcotics and with whom he had talked in the Police Building approximately a week and a half before. They watched defendant, who was smoking a cigarette, nod his head, reach up with his hand and take the cigarette out of his mouth, indicate "with his hand down Third Street" and, with Hastey, walk east on Third. They circled the block in their police car and observed defendant and Hastey walk south on Spring between Third and Fourth; they drove around the block again and saw them on Fourth, cross Spring and cut through a parking lot. The officers turned south on Spring and came back up the alley where they observed defendant seated in an automobile with Hastey standing outside. They got out of the police car and approached defendant seated in the vehicle; Sergeant Barber had his badge exposed and said, "We are Police officers. Don't move." Officer Garrahan went around to the passenger side of the vehicle and asked defendant to get out on the driver's side; he testified specifically that they did not arrest defendant at that time, even though he thought defendant was then committing a felony—a violation of the narcotic laws. Defendant got out of the car and as Officer Garrahan walked around the vehicle, it appeared to him defendant was attempting to swallow— he could see the muscles of his throat working up and down. Knowing that in this particular area "a lot of times they carry narcotics in their mouth," he asked defendant to open his mouth, which he did; the officer observed defendant's tongue pushed up against the roof of his mouth and asked him "to get his tongue down." As defendant removed his

tongue from the roof of his mouth, Officer Garrahan saw a piece of paper, which appeared to be a bus transfer, in his mouth; he then placed his hand on defendant's throat and with his thumb pushed sideways on his neck and told him to spit; defendant "almost immediately" spit out the object. During this time defendant was able to breathe, did not gasp for breath or cry out in pain, and his face did not turn color. The object defendant spit onto the ground consisted of a glass vial containing three capsules of heroin wrapped in a bus transfer. The officer picked up the object, unwrapped the transfer and laid it and the capsules on the trunk of the car. The officers had neither a search warrant nor one for defendant's arrest.

Shortly after his arrest, the officers talked to defendant in the Police Building. Defendant told them he had purchased the capsules of heroin from a man downtown for $6.00, did not know his name but "recognized his face," and somebody told him he had narcotics "today"; that he tried to swallow the capsules when he saw the police approach but did not because "he was too scared."

Defendant testified at the trial. He said that when the officers came upon him in the automobile, Sergeant Barber had a gun in his hand; that after he got out of the car Officer Garrahan told him to open his mouth. Defendant testified the officer choked him, he was not in "too much" pain, could still breathe and that he spit out the object because the officer "was choking" him. However, on cross-examination defendant admitted he opened his mouth "right away" when asked by the officers to do so, that he did not begin to lose consciousness or have difficulty breathing and he felt as if his face was changing color "a little bit; not too much," but couldn't tell.

In support of his position that the heroin was obtained as the result of an unreasonable search and seizure in violation of his rights of privacy and due process and against self-incrimination, appellant relies primarily on *Rochin* v. *California*, 342 U.S. 165 [72 S.Ct. 205, 96 L.Ed. 183, 25 A.L.R.2d 1396], and *People* v. *Martinez*, 130 Cal.App.2d 54 [278 P.2d 26]; and submits that he was arrested when the officer said, "We are Police officers. Don't move," that there was insufficient reasonable and probable cause for his arrest at that time, and that the officers used unreasonable physical force to extract the narcotics from his mouth.

Appellant insists he was arrested when the officers identified themselves and told him not to move; but Officer

Garrahan's specific testimony that they did not then arrest defendant and the uncontradicted facts in the record do not support such a claim. It is apparent from the evidence, that at first the officers were conducting an investigation and were interested only in questioning the defendant, whom Garrahan had previously seen in connection with narcotics and whom they had observed loitering in an area of high narcotic activity and acting in a suspicious manner with a known narcotics user. The officers had followed defendant through this area and finding him seated in a car parked in an alley, approached him for the purpose of interrogating him. They very properly identified themselves as police officers and displayed official identification; otherwise defendant might well have been justified in refusing to talk to them. If the trial court believed defendant's testimony that one of the officers had a gun in his hand, such appears to have been a proper precaution for their protection inasmuch as they were out of the public view in an alley, suspected defendant was then committing a felony, and had no way of knowing whether he was armed; moreover, there was no evidence the gun, if shown, was used to intimidate defendant—it was not pointed at him or displayed in a menacing fashion or used in a threatening manner. That the officers told defendant not to move seems of little significance except in so far as it concerns their safety, for defendant was seated in a vehicle out of public view and could well have reached for and used a weapon against them, or driven over them and/or away in the automobile. And that the officers ordered him to get out of the vehicle, appears to be not only a measure of precaution, but a reasonable move to facilitate questioning defendant. It is clear that the officers neither intended to arrest defendant at that time, nor did they do so.

■ There is certainly nothing unreasonable about police seeking an interview with a suspect or witness, calling upon him for that purpose wherever he may be found—at his home (*People* v. *Michael,* 45 Cal.2d 751 [290 P.2d 852]; *People* v. *Jaurequi,* 142 Cal.App.2d 555 [298 P.2d 896]), place of employment (*People* v. *Zavaleta,* 182 Cal.App.2d 422 [6 Cal. Rptr. 166]) or in an automobile (*People* v. *Davis,* 188 Cal. App.2d 718 [10 Cal.Rptr. 610]; [*People* v. *One 1958 Chevrolet,* 179 Cal.App.2d 604 [4 Cal.Rptr. 128]; *People* v. *King,* 175 Cal.App.2d 386 [346 P.2d 235]) and questioning him, where the circumstances appear to warrant such action. In *People* v. *King,* 175 Cal.App.2d 386 [346 P.2d 235], police stopped defendant who was driving a car, by pulling him to the curb,

and sought to question him. Said the court at page 390: "The fact that a police officer stops a person and talks to him and asks some reasonable questions under the circumstances does not necessarily mean that the person so stopped is arrested. (See *People* v. *Michael, supra,* 45 Cal.2d 751, 754; *People* v. *Hood,* 149 Cal.App.2d 836, 838-839 [309 P.2d 135]; *People* v. *Martin,* 45 Cal.2d 755, 761 [290 P.2d 855].) In other words, we believe that the federal agents under the circumstances of this case, had the right to stop the car and to question the appellant quite apart from the making of any arrest, and that that is what was done. Whether an officer has a right to stop a car and interrogate the occupant is an issue quite separate from whether he has a right to stop the car and arrest the occupant and conduct a search. The strength of the information the officer requires to engage in questioning is necessarily much less than it would be to arrest and search."

The trial court expressly found that Officer Garrahan ordered the "defendant out of the car for the purpose of interrogating" him; we likewise conclude that the officers at that time were intent only on questioning defendant and that under the circumstances and for that purpose, the officers' conduct was reasonable and proper. After observing the defendant's suspicious conduct in a questionable area with a person of known drug connections, they approached the defendant, not by pulling his car to the curb as in the King case, *supra,* 175 Cal.App.2d 386, but by approaching him while he was seated in a parked vehicle; and, for the purpose of interrogating him, ordered him out of the car. Having established that there was sufficient cause to investigate, they were justified in taking precautionary measures. (*People* v. *Davis,* 188 Cal.App.2d 718, 722 [10 Cal.Rptr. 610].) That in fact the officers had no opportunity to question defendant and did not do so before they saw him trying to dispose of the narcotics by swallowing, does not vitiate their original intent to merely question him when they ordered him to remove himself from the automobile.

It was not until after Officer Garrahan, an experienced narcotics officer who knew that in that area it was common to carry narcotics in the mouth, observed defendant attempting to swallow, that the officers made any step toward his arrest or sought to restrain him; and it is here the issue arises as to whether the officers had reasonable cause to arrest defendant (Pen. Code, § 836, subd. 1). Officer Garrahan testified that although it was not their intention to then arrest defend-

ant, that even before, when the officers first approached defendant and told him to get out of the car, he thought defendant was committing a felony—a violation of the narcotic laws; and the evidence of conditions, circumstances and information then known to him supports the trial court's finding that immediately prior to defendant's arrest the officer had reasonable cause to believe defendant had narcotics in his possession. (*People* v. *Baca,* 184 Cal.App.2d 693 [7 Cal.Rptr. 864]; *People* v. *Murphy,* 173 Cal.App.2d 367 [343 P.2d 273].)

"Reasonable cause has been generally defined to be such a state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime." (*People* v. *Ingle,* 53 Cal.2d 407, 412 [348 P.2d 577].)

Considering Officer Garrahan's long experience as a narcotics officer, his familiarity with narcotics activities, his knowledge of the area, his observations of defendant's activities and his previous knowledge of defendant and the past of his companion, it was fair and reasonable for the trial court to conclude that the information, conditions and circumstances facing the officer at that time were sufficient to arouse in his mind a strong suspicion and honest belief that defendant was violating the law. (*People* v. *Baca,* 184 Cal.App.2d 693 [7 Cal.Rptr. 864]; *People* v. *Ingle,* 53 Cal.2d 407 [2 Cal.Rptr. 14, 348 P.2d 577]; *People* v. *Poole,* 174 Cal.App.2d 57 [344 P.2d 30].)

Appellant's main contention is that the officer's method of preventing him from swallowing the capsules constituted physical force such as that denounced in *Rochin* v. *California,* 342 U.S. 165 [72 S.Ct. 205, 96 L.Ed. 183, 25 A.L.R. 1396] and *People* v. *Martinez,* 130 Cal.App.2d 54 [278 P.2d 26]. In that connection the trial court expressly found that the officer had "placed his hand on his [defendant's] throat, nor [*sic*] for the purpose of choking him . . . but to prevent him from swallowing" the narcotics and "that there was no choking and that he [officer] just held him there and ordered him to spit out the object that he had in his mouth, and that the defendant complied with that request"; and concluded that "the officer's restraint was not of such a character as to come within the *Rochin* case, that it was not of such force as to be regarded as unconscionable."

The amount of force used is clearly a question of fact. (*People* v. *Smith,* 50 Cal.2d 149 [323 P.2d 435]; *People* v. *Dixon,* 46 Cal.2d 456 [296 P.2d 557].) As it had a right to do,

the lower court rejected defendant's version of what occurred —that the officer choked him—and accepted as true the testimony of Officer Garrahan—that he did not choke or hurt the defendant or interfere with his breathing, that he placed his hand on defendant's throat to prevent him from swallowing the object in his mouth and when he told the defendant to spit he immediately did so. (*People* v. *Smith,* 50 Cal.2d 149 [323 P.2d 435]; *People* v. *Poole,* 174 Cal.App.2d 57 [344 P.2d 30].)

The evidence reveals that under the circumstances the officer's conduct was entirely reasonable, to prevent defendant, whom he suspected of then having narcotics in his mouth, from disposing of the evidence; his acts do not constitute the unconscionable, brutal or shocking force condemned in *Rochin* v. *California,* 342 U.S. 165 [72 S.Ct. 205, 96 L.Ed. 183, 25 A.L.R.2d 1396]. The parties engaged in no struggle. Defendant gave no resistance and he "almost immediately" did what he was told. According to the officer's testimony it was only a matter of seconds before defendant spat out the narcotics. The evidence supports neither the finding of force which the Supreme Court censured in the Rochin case, *supra,* 342 U.S. 165, nor more force than was reasonably necessary to remove the contraband from defendant's mouth. The officer's conduct can in no way be likened to the force used in "jumping upon" Rochin to extract the capsules from his mouth and later to take them from him by means of an emetic. Nor is *People* v. *Martinez,* 130 Cal.App.2d 54 [278 P.2d 26], wherein officers threw defendant to the ground and choked him until he spat out the narcotics, here controlling. The quotation therefrom so strongly relied upon by appellant—that the question "is not how hard an officer may choke a suspect to obtain evidence but whether he may choke him at all" (p. 56), is clearly not applicable where, as here, the evidence supports the trial court's finding that defendant was not choked.

Similar on its facts is *People* v. *Dawson,* 127 Cal.App.2d 375 [273 P.2d 938], wherein the officer put his arm around defendant's neck and told him to spit out the narcotics; there even a slight struggle ensued before defendant was handcuffed and spat out the heroin. Said the court at page 376: "Clearly there is no brutality or shocking force demonstrated by such evidence." It is as clear in the case before us that the facts simply do not bring it within the rule laid down in the authorities relied upon by appellant, and we are in accord with the conclusion of the trial judge that the action of Officer Garra-

han under the circumstances was reasonable for the purpose for which the force was used and not the kind that was condemned in either *Rochin* v. *California,* 342 U.S. 165 [72 S.Ct. 205, 96 L.Ed. 183, 25 A.L.R.2d 1396], or *People* v. *Martinez,* 130 Cal.App.2d 54 [278 P.2d 26].

For the foregoing reasons the judgment and order are affirmed.

Wood, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied March 22, 1961, and appellant's petition for a hearing by the Supreme Court was denied May 3, 1961.