[Crim. No. 7625. Second Dist., Div. One. Feb. 5, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. VIRGINIA CARROL AMBROSE, Defendant and Appellant.

Marvin L. Klynn and Russell E. Parsons for Defendant and Appellant.

Stanley Mosk, Attorney General, and S. Clark Moore, Deputy Attorney General, for Plaintiff and Respondent.

LILLIE, J.—Defendant was charged with possession of heroin, and three prior felony convictions. By stipulation the matter was submitted to the court on the transcript of the preliminary hearing and the police and arrest reports in the file of the district attorney. She appeals from the judgment of conviction and sentence; the purported appeal from the latter is dismissed. (*People* v. *Gallardo,* 41 Cal.2d 57 [257 P.2d 29].)

According to the testimony of Deputy Velasquez, the following occurred. Sheriff's deputies were engaged in conducting a narcotic investigation of defendant and the area in question; Velasquez had been told by confidential informants, among them Robert Garcia and Henry Korman whom he had previously used, that defendant, her husband and another suspect were selling narcotics at their residence and making delivery to purchasers at a parking lot in a market at Avalon and Florence Avenues. On October 29, 1959, at 12:30 p. m.,

Velasquez and deputies Nesmith and Guitterez began a surveillance of the parking area of the market; around 1 p. m. Velasquez observed defendant drive into the lot and park a vehicle he recognized as one he had previously seen at her residence. He saw her walk to the front entrance of the market, motion to a woman known to the deputies as a narcotic user and begin a conversation with her; whereupon, Velasquez approached defendant, displayed his identification and told her he was a police officer. Upon seeing his badge defendant hurriedly backed up "trying to evade" him and at the same time made a motion to her mouth with her right hand in which Velasquez saw a rubber balloon containing a white powdery substance; as she did so, he struck her hand. Backing up, defendant hit a sheriff's vehicle that had been parked directly behind her; and as he struck her hand Velasquez saw the heroin leave it and fall to the asphalt beside her. During this time the woman to whom defendant had been talking disappeared. Defendant was placed under arrest and questioned concerning the heroin in the balloon; she said she knew nothing about the substance or how it got there.

In her defense, defendant told an involved story about going to the market, parking in the lot, purchasing a newspaper at a stand near the door, and seeing a woman on the other side fall back screaming and run away among the parked cars pursued by Velasquez. She testified that after seeing this she was then struck and knocked down by a station wagon and handcuffed by Velasquez, at which time she heard one of the officers say, "I've got it," and laugh. A Mrs. Harris, who claimed never to have seen defendant before October 29, testified to much the same story.

Appellant claims that the heroin was obtained as the result of an unlawful search and seizure and that her arrest was not valid having been made without reasonable cause aggravated by a violation of section 841, Penal Code.

Inasmuch as Deputy Velasquez had no warrant, for the arrest of defendant to be valid he must have had reasonable cause to believe that she had committed a felony or was committing a public offense in his presence. (Pen. Code, § 836, subds. 1, 3.) ■ There being no formula for its determination (*Go-Bart Importing Co.* v. *United States*, 282 U.S. 344 [51 S.Ct. 153, 75 L.Ed. 374]), what constitutes "reasonable cause" depends upon the facts and circumstances of each case (*People* v. *Hollins*, 173 Cal.App.2d 88 [343 P.2d 174]; *People* v. *Wickliff*, 144 Cal.App.2d 207 [300 P.2d 749]; *People* v.

*Ingle,* 53 Cal.2d 407 [2 Cal.Rptr. 14, 348 P.2d 577])—the situation presented or apparent to the officers at the time they were required to act. (*People* v. *Kilvington,* 104 Cal. 86 [37 P. 799, 43 Am.St.Rep. 73] ; *People* v. *Carella,* 191 Cal.App.2d 115 [12 Cal.Rptr. 446] ; *People* v. *Sanchez,* 189 Cal.App.2d 720 [11 Cal.Rptr. 407] ; *People* v. *Baca,* 184 Cal.App.2d 693 [7 Cal.Rptr. 864] ; *People* v. *Evans,* 175 Cal.App.2d 274 [345 P.2d 947] ; *People* v. *Murphy,* 173 Cal.App.2d 367 [343 P.2d 273] ; *People* v. *Hollins,* 173 Cal.App.2d 88 [343 P.2d 174] ; *People* v. *Silvestri,* 150 Cal.App.2d 114 [309 P.2d 871].)

■ The weight to be accorded the information possessed by the officers at the time they made the arrest is for the trial court and it, not the officers, makes the determination whether the information upon which their belief was based, constitutes "reasonable cause." (*People* v. *Fisher,* 184 Cal. App.2d 308 [7 Cal.Rptr. 461] ; *People* v. *Boyles,* 45 Cal.2d 652 [290 P.2d 535] ; *People* v. *Carella,* 191 Cal.App.2d 115 [12 Cal.Rptr. 446] ; *People* v. *Taylor,* 176 Cal.App.2d 46 [1 Cal.Rptr. 86] ; *People* v. *Arter,* 169 Cal.App.2d 439 [337 P.2d 534] ; *Lorenzen* v. *Superior Court,* 150 Cal.App.2d 506 [310 P.2d 180].) ■ "Reasonable cause has been generally defined to be such a state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime." (*People* v. *Ingle,* 53 Cal.2d 407, 412 [2 Cal.Rptr. 14, 348 P.2d 577] ; *People* v. *Fischer,* 49 Cal.2d 442 [317 P.2d 967] ; *Bompensiero* v. *Superior Court,* 44 Cal.2d 178 [281 P.2d 250] ; *People* v. *Kilvington,* 104 Cal. 86 [37 P. 799, 43 Am.St.Rep. 73].)

■ Having previously been informed of defendant's narcotic activities at her residence and the market parking lot, and having observed defendant motion over a known narcotic user and engage in conversation with her at the market, the deputy quite reasonably suspected she was then engaged in some unlawful conduct, and it was entirely proper for him to approach her for the purpose of questioning her (*People* v. *Burke,* 47 Cal.2d 45 [301 P.2d 241] ; *People* v. *Michael,* 45 Cal.2d 751 [290 P.2d 852] ; *People* v. *Sanchez,* 189 Cal.App. 2d 720 [11 Cal.Rptr. 407] ; *People* v. *Davis,* 188 Cal.App.2d 718 [10 Cal.Rptr. 610] ; *People* v. *Campos,* 184 Cal.App.2d 489 [7 Cal.Rptr. 513] ; *People* v. *Neal,* 181 Cal.App.2d 304 [5 Cal.Rptr. 241] ; *People* v. *Zavaleta,* 182 Cal.App.2d 422 [6 Cal.Rptr. 166] ; *People* v. *Jaurequi,* 142 Cal.App.2d 555 [298 P.2d 896] ; *People* v. *Elliott,* 186 Cal.App.2d 178 [8 Cal.

Rptr. 795]; *People* v. *Tisby,* 180 Cal.App.2d 574 [5 Cal.Rptr. 614]); and the fact that he did so does not mean that she was then under arrest. (*People* v. *Michael, supra*; *People* v. *Martin,* 45 Cal.2d 755 [290 P.2d 855]; *People* v. *Sanchez,* 189 Cal.App.2d 720 [11 Cal.Rptr. 407]; *People* v. *King,* 175 Cal. App.2d 386 [346 P.2d 235]; *People* v. *Hood,* 149 Cal.App.2d 836 [309 P.2d 135].) Moreover it is apparent from the record, and the trial court must have found, that at the time the deputy walked up to defendant and identified himself he neither had any intention of arresting her nor did he do so. (*People* v. *Robles,* 183 Cal.App.2d 212 [6 Cal.Rptr. 748]; *People* v. *Elliott,* 186 Cal.App.2d 178 [8 Cal.Rptr. 795].) He started to talk to her by first telling her he was a police officer and producing his badge, but her conduct then made it impossible for him to continue and, viewed in the light of his previous information of her narcotic activities, his observations of her up to that time, and its furtive nature, her conduct provided the deputy with sufficient basis to support a reasonable belief that defendant then had narcotics in her possession and was in the act of committing a felony. (*People* v. *Robles,* 183 Cal.App.2d 212 [6 Cal.Rptr. 748]; *People* v. *Garcia,* 171 Cal.App.2d 757 [341 P.2d 351]; *People* v. *Tisby,* 180 Cal.App.2d 574 [5 Cal.Rptr. 614].) Upon seeing his badge she hurriedly backed up in an attempt "to get away from" Velasquez, and at the same time put her hand, in which he saw a balloon containing a white powdery substance, to her mouth. As an experienced member of the narcotics detail the deputy knew the white powdery substance to resemble, and suspected it to be, heroin, the rubber balloon container to be one customarily used among those engaged in narcotic activities for carrying and storing heroin, and the placing of the narcotic in the mouth or swallowing the same to be often resorted to as a means of disposing of it. When the deputy saw the furtive action and suspicious conduct of defendant's move backward and her attempt to secrete the balloon in her mouth, he frustrated her act by knocking the object from her hand. It was only then, after he saw the heroin fall to the ground, he made the arrest.

While appellant complains there was an unreasonable search and seizure, it is clear from the evidence that no search took place prior to defendant's arrest. When defendant attempted to back away from the deputy, Velasquez saw the heroin in her right hand and picked it up when it fell to the ground. "To observe that which is open and patent is

not a search." (*People* v. *Jaurequi*, 142 Cal.App.2d 555 [298 P.2d 896]; *People* v. *Roberts*, 182 Cal.App.2d 431 [6 Cal. Rptr. 161]; *People* v. *Quinn*, 194 Cal.App.2d 172 [14 Cal. Rptr. 814]; *People* v. *Russell*, 196 Cal.App.2d 58 [16 Cal. Rptr. 228]; *People* v. *Linden*, 185 Cal.App.2d 752 [8 Cal. Rptr. 640].) That the deputy knocked the narcotic out of defendant's hand is of little significance in the matter of search, for he saw it in her hand before he struck it, indeed it is for that reason he did so; moreover, on the issue of seizure, this was the extent of any force used against defendant, her contact with the automobile having come about through her own efforts to get away from the deputy. The amount of force used to release the narcotic from defendant's hand was entirely reasonable, its purpose to prevent her from disposing of the evidence by secreting it in her mouth or swallowing it. (*People* v. *Smith*, 50 Cal.2d 149 [323 P.2d 435]; *People* v. *Dixon*, 46 Cal.2d 456 [296 P.2d 557]; *People* v. *Sanchez*, 189 Cal.App.2d 720 [11 Cal.Rptr. 407].)

Appellant says that the "search" and seizure took place before her arrest and thus were improper. However for a search and seizure to be valid it is not always necessary for the arrest to precede the same; if they are part of the same transaction they may occur prior thereto. (*People* v. *Vice*, 147 Cal.App.2d 269 [305 P.2d 270]; *People* v. *Baca*, 184 Cal. 2d 693 [7 Cal.Rptr. 864]; *People* v. *Simon*, 45 Cal.2d 645 [290 P.2d 531].) "The fact that the search[es] preceded the arrest is of no consequence. (*People* v. *Luna*, 155 Cal.App.2d 493, 494-495 [318 P.2d 116].)" (*People* v. *Williams*, 189 Cal. App.2d 29, 38 [11 Cal.Rptr. 43].) ". . . it is immaterial that the seizure of the paraphernalia used in the commission of the crime may have preceded rather than followed the arrest . . ." (*People* v. *Martin*, 45 Cal.2d 755, 762 [290 P.2d 855].)

Contrary to appellant's claim that there is no evidence concerning the identity of the informants, and none that they were reliable or if they were informant-participants, the record clearly shows that the two informers were Robert Garcia and Henry Korman, that Deputy Velasquez had received information from these men in the past and that no informant participated in any of the events of October 29. In any event, the informants' reliability is of little significance here for the evidence reveals that in making the arrest the deputies relied almost exclusively on their personal observations of defendant

and her conduct immediately prior thereto. (*People* v. *Lovio,* 189 Cal.App.2d 427 [11 Cal.Rptr. 162].)

██ Appellant's argument that the deputies failed to comply with section 841, Penal Code, in that prior to arresting her they did not inform her of their intention to do so and the cause of the arrest, is without merit, for at the time of her arrest the deputies had reasonable cause to believe that she was, and she was "actually engaged in the commission of . . . an offense. . . ." (§ 841.)

Presented to the trier of fact were two versions of what occurred on October 29; the trial judge, after hearing and observing the witnesses and determining their credibility, weighing the evidence and resolving the factual conflicts, accepted the deputies' testimony as true rejecting that of defendant and her witness. It is apparent that he did not believe defendant's story or that her witness, Mrs. Harris, who claimed not to have known her before October 29, fell into the category of a disinterested bystander. ██ Since conflicts in stories told by various witnesses are to be resolved by the trier of fact (*People* v. *Nunley,* 194 Cal.App.2d 233 [14 Cal.Rptr. 874]; *People* v. *Casado,* 181 Cal.App.2d 4 [4 Cal. Rptr. 851]) we find no merit in appellant's argument predicated on the testimony of Mrs. Harris.

For the foregoing reasons the judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.