[Crim. No. 2875.    Third Dist.    Dec. 30, 1958.]

THE PEOPLE, Respondent, v. ISIAH CHATMAN,
Appellant.

Howard A. Potts, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, Doris H. Maier and William O. Minor, Deputy Attorneys General, for Respondent.

VAN DYKE, P. J.—This is an appeal from a judgment declaring appellant guilty of violating section 11500 of the Health and Safety Code. On February 3, 1958, appellant was

the tenant of a room in a Sacramento hotel. About 10 p. m. four Sacramento police officers and one inspector of the Bureau of Narcotic Enforcement forced their way into the room. They had no warrant for arrest or search. In the room they saw appellant and three others who were then engaged in "capping" a white powder containing heroin. On a bedside table was a package containing 44 grains of the powder and various items being used in the "capping" operation. There was also a hypodermic needle, an eye dropper and 14 paper bindles containing powder. The officers arrested appellant and he was later charged with possession of heroin. They seized the articles listed above and they were introduced in evidence at the trial. There was also introduced an extra-judicial statement made by appellant to the officers in which he said that one of the four persons arrested had asked him for permission to use his room to cap some heroin; that this person asked appellant to help him with that work; that appellant agreed and was to receive therefor a small amount of the narcotic. At the trial appellant neither took the stand himself nor offered evidence in his own behalf. The trial court found appellant guilty.

The first witness for the prosecution was a chemist who testified that he had analyzed the white powder found in defendant's room and that the same contained heroin. He was followed by the inspector who testified that when the officers forced their way into the room they found appellant and the others there with the articles above described. The articles were then offered in evidence and objection was made to their admissibility as having been unlawfully seized. Counsel for the prosecution then further examined the inspector to determine the circumstances that lay back of the forcible entry into the appellant's room and the seizure of the articles found there. He testified that a few minutes before he entered the room he met an informer near the Sacramento police station who told him that appellant was in his room at that time with others and that they were then "capping up," that is, placing the narcotic in caps or bindles; that he gathered the police to aid him and went to the room and broke in; that the informant had told him an hour before that one Nolen, who was in the room when the officers arrived there, had just returned from Southern California with a large quantity of heroin; that he had known the informer for about a month; that prior to this occasion the informer had several times given him information about narcotic law infringements; that he had checked the

information and found it to be reliable. At this point the witness was cross-examined by defense counsel. He was asked to identify the informant, but before the question could be answered counsel for the prosecution asked permission to examine further on *voir dire*. That was granted and the inspector further testified as follows: When he talked to the informer, the informer knew that he was a state narcotic inspector and he had told the informant he intended to use the information in his work. The informant, from the first, had asked if anyone would be told that he was giving information and had been assured that they would not and that the officer would not reveal the informer's identity. It was the policy of the bureau to receive information on those terms. Having gone that far, counsel for the prosecution informed the court that he believed the search and seizure had been justified; that the articles ought to be admitted in evidence, but that if the court ruled otherwise then the People were prepared to drop the prosecution of appellant rather than reveal the identity of the informer. Counsel for appellant then again took the witness under cross-examination. He asked the witness as to whom the informer had given information. Objection was interposed that to permit the answer would tend to identify the informer. The objection was sustained. Counsel for appellant then asked the witness if, on the first occasion he had received information, it had been about appellant, and the answer was negative. The inspector repeated, however, that he had checked the reliability of that first information although he had made no arrest, believing that he had not enough information to justify it. He said his investigation as to reliability had been accomplished by talking to other people and their answers had satisfied his mind that the person informed against was dealing in narcotics. The inspector testified further that he had paid the informer an award of $40 for the last information he had supplied; that on one other occasion he had made an arrest based upon the information of the informer. At this point counsel for appellant offered a general objection to any testimony concerning what the officers had seen in appellant's room and to the introduction in evidence of the articles seized there. The objections were overruled, the testimony of the inspector was admitted and the articles seized were received in evidence.

Appellant challenges the legality of his arrest and the resulting search and seizure. He says the evidence showed that the only and sole basis for the arrest of appellant was information given to Inspector Best by an informant to the effect that

appellant and three other individuals were in the aforementioned hotel ''capping up'' narcotics. In this appellant is mistaken. ■ Regardless of the conduct of the officers in entering the room, when they were there they saw the offense of possession of narcotics being committed in their presence. At that moment, regardless of all else, it was their duty to make the arrest. Under such circumstances, any person may make an arrest, be he officer or private person. (Pen. Code, § 836, as to peace officers; Pen. Code, § 837, subd. 1, as to private persons.) As to the officers, therefore, the duty to make the arrest and, as an incident thereto, to seize and preserve the evidence of the offense was immediate and paramount. If an officer, however he comes upon the scene, sees A shoot and kill B, it is his duty to arrest A and to seize the murder weapon. He is no less a policeman because he came upon the scene unlawfully. ■ The contention that the evidence seized and the testimony as to what the officer saw is inadmissible by reason of the conduct of the officers in entering appellant's room presents a different question. The lack of warrant and the forcible entry may exclude the evidence unless the entry, search and seizure rested upon a reasonable cause to believe appellant had committed a felony.

Appellant contends that the information on which the inspector acted in going to appellant's room with the other officers for the purpose of arresting appellant was insufficient. ■ A peace officer may make an arrest without a warrant when he has reasonable cause for believing the person arrested to have committed a felony (Pen. Code, § 836; *People* v. *Smith,* 50 Cal.2d 149 [323 P.2d 435]), and in doing so may make a forcible entry for purposes of arrest. Incidental to the arrest he may search the person arrested and the premises where he is found. (4 Am.Jur., Arrest, § 84.) ■ Reasonable cause to justify an arrest may consist of information obtained from others and is not limited to evidence that would be admissible at the trial on the issue of guilt. ■ What are reasonable grounds for believing that a person has committed a felony is often a question of fact for the trial court and in cases where the reliability of a confidential informer is in question the issue turns mainly on the credibility of the officer, the soundness of his reasons for relying upon the informant, and the nature of the informant's disclosure. (*People* v. *Boyd,* 162 Cal.App.2d 332 [327 P.2d 913]; *People* v. *White,* 159 Cal.App.2d 586 [324 P.2d 296].) We have heretofore related the facts testified to by the inspector con-

cerning the information he had received and the effort he had made to check the reliability of his informant and we hold that the ruling of the trial court that the evidence showed reasonable cause for an arrest of the appellant based thereon is sufficiently supported.

█ Appellant next contends that his right of cross-examination of the inspector concerning the information he had received was prejudicially restricted. Defense counsel for appellant asked the inspector to identify a person concerning whom the informant had given information a month prior to appellant's arrest, and as to whom the inspector had said he had found the information reliable. The objection of the prosecution that the public interest would suffer by the disclosure, since it would lead to the identity of the informer, was sustained. This was error. The prosecution put the credibility of the inspector in issue when they relied upon it to justify the entry, search and seizure. The identity of the person whom the inspector said the informer had told him about might have led to evidence severely impeaching the inspector's testimony. For instance, the answer might have disclosed either that the inspector had no such person in mind or if a name was given that no such person existed.

It appears from the foregoing that appellant's counsel had made it clear to the court that he wished to learn the identity of the informer as a part of his challenge to the proof offered by the prosecution in discharge of the burden to show that the officers had reasonable ground to believe appellant had committed a felony. The court refused to permit disclosure of the identity of the informer, but, over objection, permitted use in evidence of what the search and seizure revealed.

█ ". . . If testimony of communications from a confidential informer is necessary to establish the legality of a search, the defendant must be given a fair opportunity to rebut that testimony. He must therefore be permitted to ascertain the identity of the informer, since the legality of the officer's action depends upon the credibility of the information, not upon facts that he directly witnessed and upon which he could be cross-examined. If an officer were allowed to establish unimpeachably the lawfulness of a search merely by testifying that he received justifying information from a reliable person whose identity cannot be revealed, he would become the sole judge of what is probable cause to make the search. Such a holding would destroy the exclusionary rule. . . .

"In sum, when the prosecution seeks to show reasonable

cause for a search by testimony as to communications from an informer, either the identity of the informer must be disclosed when the defendant seeks disclosure or such testimony must be struck on proper motion of the defendant.'' (*Priestly* v. *Superior Court,* 50 Cal.2d 812, 818-819 [330 P.2d 39].)

In view of the fact that the court had sustained objections as above noted and that the State had taken the position that if disclosure were compelled it would dismiss the action in preference to such disclosure being made, we think this record sufficiently demonstrates that the court thoroughly understood the situation and that the court erred in admitting the testimony of the inspector as to what he saw in the appellant's room and in admitting into evidence the articles there seized. It is quite apparent from this record that had a motion been made to strike such testimony it would have been denied.

The judgment appealed from is reversed and the cause is remanded.

Schottky, J., and Warne, J. pro tem.,* concurred.

Respondent's petition for a hearing by the Supreme Court was denied February 25, 1959. Shenk, J., and Spence, J., were of the opinion that the petition should be granted.

*Assigned by Chairman of Judicial Council.