THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, v. JOSÉ LUIS LÓPEZ RIVERA, Defendant and Appellant.

Nos. CR-63-56, 57, 58. Decided January 21, 1964.

*J. B. Fernández Badillo, Solicitor General,* and *Irene Curbelo, Assistant Solicitor General,* for The People. Appellant did not appear.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

On November 28, 1962 appellant was sentenced by the San Juan Part of the Superior Court to serve an indeterminate sentence of from five to ten years' imprisonment in the penitentiary in each of two counts for violation of the Narcotics Act of Puerto Rico. On the same date and at the same trial he was sentenced by that Part of the Superior Court to

pay a fine of $5 for violation of Ordinance No. 18 of the Government of the Capital of September 6, 1949.

In the proceedings had before the trial court appellant was ably assisted by an attorney of the Legal Aid Society. Feeling aggrieved by the judgments of conviction, his attorney filed petitions for appeal.

From the record of this Court it appears that a memorandum on waiver of legal representation, signed by a member of the Legal Aid Society other than the attorney who assisted appellant at the trial, was filed on June 24, 1963, setting forth that he had read the transcript of the evidence and had not found any errors which could be assigned on appeal, and moved to be relieved from the legal representation of the case before this Court. Mr. Justice Ramírez Bages, acting judge in vacation, granted to appellant a period of 30 days which would expire on September 16, 1963 to file his brief, if he deemed it advisable. Appellant, who is in prison, did not file a brief. Consequently, the record did not contain either a memorandum of the Solicitor General, wherefore the appeal was submitted for final disposition.

In view of the fact that this indigent defendant had not been assisted before this Court by the legal representative appointed for him, we deemed it proper, it being a criminal case, to make a full examination of the record. We have done it on other similar occasions. After examining the record, and in view of § 178 of the Code of Criminal Procedure and other procedural questions which will be discussed in the course of this opinion, we had serious doubts as to the correctness in law of the judgments of conviction.[1]

---

[1] Although it does not arise from an identical situation, it is well to note that in *Douglas* v. *California*, 372 U.S. 353, decided March 18, 1963, the Supreme Court of the United States held that the refusal of a state court of appeals to appoint counsel for an indigent appellant to assist him in the only appeal which he had *as of right* in the state courts, violated the Fourteenth Amendment to the Constitution and reversed the judgment rendered on the merits without the benefit, on appeal, of counsel. In crimi-

After having been convicted by a jury in the cases for violation of the Narcotics Act and of a violation of the municipal ordinance by the judge as court without a jury, appellant filed motions for a new trial on November 2 and 21, 1962 in which he raised, among others, the question that it was incumbent on the jury rather than on the judge to decide whether or not appellant had violated the municipal ordinance and to pass upon his innocence or guilt as respects the latter offense; that the jury was bound (as a result of the foregoing), as a question of fact, to give credit or not to the material evidence admitted in the drug cases, as well as whether the information respecting the municipal ordinance did not charge the commission of a public offense.

In the light of the examination of the record and of the legal norms applicable to the case as they will be stated, it seemed to us that the questions raised by defendant in his motions for a new trial, which were flatly denied and which were also raised in the course of the prosecution, were not frivolous and should have deserved more careful consideration on the part of the trial court. In view of the situation described, we deemed it proper and necessary for the Solicitor General to express his views on the questions raised by appellant in those motions, since if the latter was right this Court would grant him the new trial which he failed to obtain from the trial court.

The Solicitor General has filed a memorandum and is agreeable that the information for violation of the municipal ordinance did not charge any offense, and since this seemed to be correct, he is also agreeable that defendant should have been tried for this offense by the jury rather than by the judge and acquiesces in the reversal of the judgment

---

nal cases this Court has afforded protection to appellants who have no counsel, subject to the cooperation of the members of the forum. Perhaps it would be proper to consider the idea of a permanent defense of counsel attached to the Court as part of its institutional function.

convicting appellant for violation of Ordinance No. 18 of the Capital.

■ The ordinance in question provides in its § 2 the following: "It is hereby prohibited to stop on the streets, avenues or sidewalks, in groups of more than three persons which obstruct or hinder the transit of other persons, as well as to carry bundles or packages which stand in the way of other pedestrians." The information charges that on or about March 15, 1962, the appellant . . . unlawfully, wilfully, and maliciously . . . was one of a group on the sidewalk together with other individuals who managed to escape, thereby obstructing the free transit of persons.

There is not the least doubt that the information is defective. It seems, however, that the defect.is not so fatal as not to charge an offense, since the allegation of forming a group with *other individuals* may impliedly contain the fact of more than three persons. At any rate, defendant could have requested a bill of particulars on this point and required the prosecution to specify the number of persons present, as well as the manner in which they obstructed or hindered the transit of the others.

■ Regarding the allegation that the jury was bound to pass on the innocence or guilt of defendant in the case for violation of the ordinance of the Capital, under the circumstances of this case that was the correct situation of law. Section 178 of the Code of Criminal Procedure provided: "Issues of fact in cases of felony and in cases of misdemeanor, when the information was originally filed in the district court [superior] and the municipal courts [district] also had jurisdiction of the same, shall be tried by jury if the accused or any one of them so elect and such election must be made before the court at the first reading of the *docket* .in which the case appears. If such election be made *it shall be entered* on the record and if it be not made.that

fact *shall be stated* in the record, in which case it shall be considered that the right to be tried by jury has been waived and the case shall be tried by the court. However, if good reasons are shown, the court may grant a trial by jury at any time after the calling of the docket."[2]

The record discloses that at the opening of the proceedings and after the jury was in attendance, the clerk read the felony informations of the Narcotics Act and the following took place:

"Hon. Judge:

Plea in the first count.

Mr. Figueroa Vélez:

Not guilty in both counts, Your Honor.

District Attorney Ortiz Juan:

There is a misdemeanor, Your Honor.

Hon. Judge:

Yes, there is M-62-727, violation of the municipal ordinance, counsellor.

Mr. Figueroa Vélez:

We deem it read. We also plead not guilty.

Hon. Judge:

Call the witnesses and swear them in."

(The trial proceeds.)

There is nothing in the preceding quotation to show that defendant submitted the violation of the ordinance separately to the court without a jury, nor to imply that the district attorney so attempted in moving that the ordinance case be included for prosecution after the jury which was to try the felony cases was already drawn and in attendance. On the contrary, all of the foregoing seems to indicate, and

---

[2] As to the felony cases, the record shows that in the act of arraignment counsel was appointed for defendant for the purposes of such act and that he moved for trial by the court without a jury. At the opening of the cases the judge ordered that a jury be impanelled. As to the misdemeanor case, the record is silent in either sense on the matter, at the arraignment.

defendant could have so understood from the statement of the district attorney, that all the offenses would be heard before the jury since the information was for a misdemeanor originally prosecuted before the Superior Court, over which the District Court also had jurisdiction. When after the effectiveness of § 11 of the Bill of Rights of our Constitution it became unnecessary for a defendant in felony cases to request a trial by jury in order to have one, although the right continues to be waivable, *cf. People* v. *Figueroa*, 77 P.R.R. 175 (1954), under the circumstances disclosed by the record in which there was no express waiver and in which the prosecuting attorney moved for inclusion of the misdemeanor to be tried within the same felony proceeding after the jury was already in attendance, it was at least necessary for defendant to express definitely his intention that the misdemeanor offense be heard by the court without a jury, or that the trial court should so advise. The record likewise discloses that before the prosecution came to an end, defendant invoked more than once the right of the jury to decide whether or not he had violated the ordinance.[3]

■ Section 178 of the Code of Criminal Procedure was superseded by the existing Rule 111 of the Rules of Criminal Procedure of 1963. This Rule provides that: "Questions of fact in cases of felony and, except as provided by special statutes, in misdemeanor cases, provided that the information was originally filed in the Superior Court and was also within the jurisdiction of the District Court, shall be tried by jury unless the defendant *expressly and personally* waives the right to trial by jury. The court shall grant the trial by jury at any time after the arraignment." Since that Rule was adopted while this case was still pending on appeal, the same may be taken into account insofar as it is favorable

---

[3] Tr. Ev. pp. 69, 70, 71, 77 and 78, before submitting the case to the jury; and pp. 100, 101, 102 and 103, objections raised by the defense to the instructions given to the jury.

to defendant respecting the question whether or not he actually waived his right to a trial by jury in the misdemeanor case. See Rule 2 of 1963; *cf. Petrovich v. Sec. of the Treasury*, 79 P.R.R. 237, 246 (1956).[4]

■ Under § 178 of the Code of Criminal Procedure and Rule 111 *supra*, and in view of the disclosures of the record, defendant had the right to request that the jury rather than the judge should determine whether or not he had committed the acts prohibited by the ordinance and whether or not he was guilty of the violation thereof. The guilt pronounced by the judge in that case shall be set aside, the judgment of conviction consequently reversed and a new trial for that offense granted to appellant.[5]

Although the Solicitor General acquiesces in the reversal of the judgment in the ordinance case, he maintains that the judgments in the felony cases for possession of marihuana and heroin should be affirmed. His main contention is that the validity of the arrest and search of appellant, and consequently the admissibility in evidence of the drugs obtained from the search, were legal questions for the judge rather than for the jury. Basically this is so and his position is correct. Yet, the problem confronting us in this case requires, however, a proper analysis in the light of the situation and other circumstances disclosed by the record which are rather quite peculiar to the facts under consideration. Let us see.

The only testimony offered by the prosecution on the violation of the ordinance and the fact of appellant's arrest and subsequent search was the testimony of police officer

---

[4] It may be observed that this Rule sets aside in part the holding in *People v. Figueroa, supra; People v. Tosado*, 77 P.R.R. 409 (1954); and *People v. Santiago*, 78 P.R.R. 64 (1955).

[5] The record discloses that at no time was Ordinance No. 18 presented in evidence before the court. *Matos v. P.R. Ry. L. & P. Co.*, 58 P.R.R. 162, 165 (1941). *Cf. People v. Solís*, 56 P.R.R. 269, 271 (1940); *People v. Garzot*, 24 P.R.R. 215, 217 (1916); *People v. Suárez*, 23 P.R.R. 226 (1915); *People v. Nochera*, 23 P.R.R. 561, 564 (1916).

Pascual Francisco Sánchez. He testified that at 12:30 *a.m.* of March 15, 1962 he and another officer were rendering patrol service in a patrol car. The witness was driving the vehicle. While they were at that hour patrolling San Agustín Street of Puerta de Tierra, the record shows the following: (Upon examination by the district attorney.)

"Q. Do you know this defendant, José Luis López Rivera?
A. Yes, sir.
Q. Did you see him that day?
A. Defendant was standing in front of 'Son de la Loma' bar on San Agustín Street.
Q. Alone or accompanied?
A. There was a group . . .

. . . . . . . .

Q. A group of how many?
A. There were five or six persons at the most.
Q. What were they doing?
A. They were standing on the sidewalk; they were talking there.
Q. How were they?
A. I mean, in a way that they occupied the sidewalk.
Q. What part of the sidewalk did they occupy?
A. All of the pavement of the sidewalk.
Q. Were there other persons on the street at that hour?

Mr. Figueroa Vélez:
It should not be leading, Your Honor.

Hon. Judge:
Yes, sustained.

District Attorney Ortiz Juan:
Who else, if anyone, was around there?

Witness:
I saw no one else except the group of them.
Q. I do not say in a group but on the street.

. . . . . . . .

Witness:
I mean, in the group itself they were the only ones; then people kept going by; there were people going by.

Q. You say that more people were going by?

A. Yes, sir.

Q. And where to?

A. They had to use the street because there was no room; they had to use the street because of their group.

Q. What prevented them from using the sidewalk? What, if anything?

. . . . . . . .

A. The group.

Q. As a result of that which you saw and of that group on the sidewalk which did not let people go by, prevented them from using it, what did you do, if anything?

A. I tried to arrest the group, all those in the group, together with colleague Gil Agosto.

Q. What happened when you tried to arrest them?

A. When I tried to arrest them, since I was driving alongside where the group was standing, I got out; my colleague got out and they started running; then we got hold only of the gentleman who was the last one who tried . . .

Q. For the purposes of the record, he points to defendant. After you arrested him, sorry, after you grabbed him, what did you do?

A. Well, we proceeded to arrest him.

Q. When you searched that person, why did you search him?

A. Because I had to take him to headquarters and I arrested him for the offense of forming group; I wasn't going to take him without searching him.

Q. After you arrested him, did the search which you made produce anything?

A. Yes, sir; on his person was seized, in the left pocket I seized . . .

Q. In the left pocket of what?

A. Of him, of his shirt.

Q. In the left pocket of his shirt you seized what?

A. I found 16 domestic cigarettes, small ones, wrapped in gift paper; also, a small piece of pink paper which, because of my experience, looked like heroin."

(The chemical test showed that they were actually marihuana cigarettes and heroin, which material was admitted in evidence by the judge and handed to the jury.)

Let us examine in part, also, other details which appear from the cross-examination of that witness.

Defense:

"Q. Listen, Don Pascual, how many persons did you count there?

A. As I said before, there were from five to six.

Q. What time of the evening was it?

A. Half past twelve at night.

Q. And you tell the ladies and gentlemen of the jury that at half past twelve at night many people were going by that place and they had to leave the sidewalk and use the street?

A. Well, because San Agustín is a very busy street.

Q. At half past twelve at night, how many persons passed by that place and had to use the street?

A. That place is quite busy.

Q. Sir, answer my question: How many persons passed by that place and had to use the street?

A. Well, when I was around there many had to.

Q. About how many?

A. I could not stop to count them.

. . . . . . . .

Q. How far did you run after this man? [He refers to defendant.]

A. Quite a short distance, not very far.

Q. So, he did not run?

A. We grabbed him.

Q. The question is whether he ran or not?

A. He tried to run.

Q. Look, 'he tried to run,' no; whether he ran or not.

A. He did not get to run.

. . . . . . . .

Q. But you say that you were driving alongside that group.

A. But many times they would not let us, they move away when they see the patrol car, they leave; we don't have time to stop and grab them.

. . . . . . . .

Q. So, San Agustín Street is quite long?

A. Yes, sir.

Q. Where did you turn in order to enter it?

A. We were traveling along Pelayo Street and turned to the right.

A. Now tell the ladies and gentlemen of the jury how many corners there are on Pelayo Street and the street where that group was standing.

A. None.

Q. Is there none?

A. No, sir.

Q. And so it is the same intersection?

A. Yes.

. . . . . . . .

Q. And this man who had the heroin and the marihuana, did he remain standing there?

A. No, sir.

Q. Wasn't that what you told the ladies and gentlemen of the jury, that he tried to run and you grabbed him?

A. That was what I told them.

Q. Is that why he did not run?

A. We grabbed him.

Q. That's why. But he did not run; this was the only one who remained, the one who had that on his person, who was the one who stayed there so you could arrest him.

A. I have not said that he stayed.

Q. But you caught him, right where he was standing?

A. No, no; I did not say that either. I said a little farther.

Q. How many steps farther?

A. More or less 10 to 12 steps farther.

Q. Ten or twelve steps farther?

. . . . . . . .

A. Feet.

. . . . . . . .

Witness:

A. When we got out that they were about to run, that they were going to run and then he tried to run, I tried to grab the one who was closer to me. What my colleague did, I cannot say.

. . . . . . . .

Q. The persons whom you say went by at that moment, who were they, were they men, were they children, were they women?

How were those persons?

A. That street is quite busy; men and women pass by that place.

Q. Don't you tell me that of the 'busy street' . . .

Hon. Judge:

Men and women; proceed.

Q. Did any of those persons complain to you that they could not use the sidewalk?

A. Personally to me, no.

Q. From the moment you saw that group, that you drive up Pelayo Street, to the moment you arrived there, got out of the car and arrested this man, how many seconds or minutes elapsed?

A. The time was quite short.

Q. During that time you saw several men and several women go by and they had to step off the sidewalk and use the street?

A. I told you before that that street is very busy day and night, at any hour.

Q. At 12 midnight? What was going on, a patronal festival?

A. No, there was a bar there; there was a dance in that bar."[6]

■■■ Section 116 of the Code of Criminal Procedure provided that a peace officer may make an arrest in obedience to a warrant delivered to him, or may, without a warrant, arrest a person: "1. For a public offense *committed* or *attempted* in his presence; 2. When a person arrested has committed a felony, although not in his presence; 3. When a felony has in fact been committed and he has reasonable cause for believing the person arrested to have committed it; 4. On a charge made, upon a reasonable cause, of the commission of a felony by the party arrested; 5. *At night*, when there is reasonable cause to believe that he has committed a felony."

---

[6] In view of the disposition which we shall make of the appeals, we will abstain from weighing in any manner whatsoever the foregoing evidence. It has been recited in order to make known, on the basis of the prosecution evidence, the manner and circumstances under which the arrest and search of appellant was made without a bench warrant.

From the language of § 116, particularly subds. 1 and 5, as well as under the well-known doctrine in force, it will suffice to repeat that officer Sánchez could under the law arrest appellant at that hour in the misdemeanor case for violation of the ordinance, without a warrant, only if such violation *was being committed* or *attempted in his presence. Cf. People* v. *Ramos,* 18 P.R.R. 954, 959 (1912); *People* v. *Soto,* 71 P.R.R 776, 779 (1950); *People* v. *Decós,* 62 P.R.R. 140, 143 (1943); *People* v. *Irizarry,* 42 P.R.R. 656, 658 (1931); *People* v. *Gil de Lamadrid,* 70 P.R.R. 875, 881 (1950); and see the ample discussion of the legal problem in *People* v. *Soto,* 77 P.R.R. 193, 198 *et seq.* (Belaval) (1954), and also the ample exposition in *People* v. *Santiago,* 78 P.R.R. 627, 633 *et seq.* (Belaval) (1955); *People* v. *Colón,* 68 P.R.R. 826, 828 (1948); *People* v. *Márquez,* 36 P.R.R. 237, 240 (1927); *People* v. *Santos,* 71 P.R.R. 288, 293 (1950). All the other cases authorized by § 116 in which there is reasonable cause to make an arrest without a warrant for committing an offense are felony situations. Therefore, the juridical rules, in their different modalities and aspects, which govern and sustain the validity of an arrest without a warrant based on a reasonable belief that an offense has been committed, even though it is not committed by a person arrested, or even if he is exonerated or acquitted, are not applicable in the consideration of this case.[7]

---

[7] It is well to make clear that the situation in this jurisdiction has changed under the Rules of Criminal Procedure of 1963. In Rule 11 it is provided that "a peace officer may arrest a defendant without the corresponding warrant: (a) *When he has reasonable grounds* to believe that the person about to be arrested has committed the offense in his presence . . . . (b) When the defendant has committed a felony, although not in the officer's presence. (c) When he has reasonable cause for believing that the person about to be arrested has committed a felony, regardless of whether or not the said offense was in fact committed." The foregoing provisions of Rule 11 are identical with § 836 of the Penal Code of California, as re-enacted in 1957, from which § 116 of our Code of Criminal Procedure was taken. Under Rule 11 it is sufficient for an officer *to have reasonable grounds to believe* that the person has committed an offense

As a result of appellant's arrest and search that night after his arrest, evidence was introduced which gave rise to the initiation of the felony proceedings and eventually to his conviction. There is such a direct nexus between the question of whether or not appellant at the time of his arrest was committing or attempting to commit a misdemeanor and the ultimate question of his conviction for drugs—since the validity of the search which produced the only evidence for these informations and conviction depended on the validity of the arrest, and the latter in turn on the fact that appellant *committed or attempted to commit* the misdemeanor *in the presence* of the officer—that it is not possible in its legal consequences to separate some facts from the others nor establish in law a complete separation between the conviction for drugs and the violation of the ordinance.

█ The trial judge grasped correctly the situation in the course of the prosecution. The record shows that at the close of the prosecution evidence—the testimony of officer Sánchez was the only evidence on the occurrence of the facts, the other being the chemical expert evidence—the prosecuting attorney offered the drugs in evidence in order to close his case. Defendant objected and the judge refused to admit them at that moment until the defendant's evidence in the case was heard. It seems clear and also logical that the judge

---

*in his presence,* while under § 116 it is necessary that the person commit or attempt to commit an offense in his presence. See cases cited: *Miller* v. *Glass,* 44 C.2d 359, 282 P.2d 501; *People* v. *Perry,* 79 C.A.2d 906, 180 P.2d 465; *Collins* v. *Owens,* 77 C.A.2d 713, 176 P.2d 372; *Ware* v. *Dunn,* 80 C.A.2d 936, 183 P.2d 128; *Coverstone* v. *Davis,* 39 C.2d 315, 239 P.2d 876; *Jackson* v. *Superior Court,* 98 C.A.2d 183, 219 P.2d 879; *People* v. *Privett,* 55. C.2d 698, 361 P.2d 602.

It will be noted that in California there is a provision in force, which was added in 1905 to § 840, to the effect that an arrest may not be made at night without a warrant, except when the offense is committed in the presence of the officer. 49 West, Anno. Penal Code 140, § 840. Our § 120, counterpart of § 840 before the 1905 amendment, has not been. changed. This accounts for certain recent expressions in the California case law, notwithstanding the revision of § 836 in 1957.

should believe, even though it was an incident on admission of evidence, that if for the purposes of conviction or acquittal in the misdemeanor case he was bound to decide that appellant did not perform acts in violation of the ordinance, the implication being that he did not commit an offense *in the presence* of the officer, the situation would then be an unlawful arrest and search which would not authorize him to admit the evidence in the felony cases, in consonance with our decisions and doctrine and the express mandate of § 10 of our Bill of Rights: "Evidence obtained in violation of this section shall be inadmissible in the courts." *Cf. Wong Sun v. United States*, 371 U.S. 471; *People v. Soto; People v. Decós, supra; Ríos v. United States*, 364 U.S. 253. The evidence of both parties having been heard in its entirety, the judge admitted the same in concluding that appellant had violated the ordinance and actually found him guilty of that offense.[8]

 Defendant's evidence actually controverted the prosecution evidence on the facts of the arrest and the misdemeanor violation. A witness testified that he saw when officer Sánchez arrested defendant; that it was around 10 p.m.; that there was no other person with appellant; that he did not see anyone run from that place; that appellant was walking along the sidewalk when the officer put him in the patrol car; that he did not see him run; that at that moment defendant was not causing scandal or doing anything.

 Although not in an identical situation but which bears some relation, the Supreme Court of California, in applying § 836 in *People v. Kilvington*, 104 Cal. 86, decided in 1894 before we adopted it as § 116 of our Code, announced the doctrine that the existence of probable cause or reasonable grounds for arresting without a warrant was a question

---

[8] The defense reiterating its objection to the admission of the evidence: "Hon. Judge:

Overruled now after hearing defendant's evidence. The offers are admitted and marked . . . ." (Record, p. 77).

of law, unless the evidence out of which the probable cause or reasonable ground arose *was conflicting*, in which case it was the duty of the court to instruct the jury what facts, if established, will constitute probable cause or reasonable ground, and submit to them the question as to the facts. *People* v. *Meléndrez*, 129 Cal. 549, 62 Pac. 109, 110; *cf. People* v. *Silvestri*, 309 P.2d 871, 873 (Cal.), also involving uncontroverted evidence as to probable cause for the arrest.[9] The principle that the question of probable cause or reasonable ground for the arrest without a warrant when the evidence thereon is not unquestionable but rather conflicting in which elements of credibility may be involved is one for the jury, is also our doctrine. See *People* v. *Santiago*, 78 P.R.R. 627, 633. If the rule stated is applied to the question of the existence of a reasonable ground or belief for an arrest, by the same token it should be applied, when there is conflicting evidence as in the case at bar, to the more specific question whether criminal acts were committed in the presence of an officer to warrant an arrest at night without a warrant. With greater reason where it has already been said that under the particular circumstances of this case, the jury should have determined whether or not appellant had violated the ordinance and convicted or acquitted him of that offense.

The only prosecution evidence in the felony cases for *possession* of drugs was the drugs themselves, the fruit of the arrest and search of the person of appellant. If drugs had not been involved, in which case no proceeding could have arisen originally, it is obvious that the fact that he did not commit the misdemeanor constituted an essential defense, if not the only one, of the accused in the felony cases, since if such

---

[9] The question of whether there is probable cause or reasonable grounds for an arrest with all its circumstances, including credibility, constitutes always a question of fact either for the judge or for the jury. *Cf. People* v. *Miller*, 176 C.A.2d 571, 575; *People* v. *Scott*, 339 P.2d 165 (Cal.); *People* v. *White*, 324 P.2d 296, 298 (Cal.); *People* v. *Chatman*, 333 P.2d 374, 377 (Cal.).

defense should prevail the prosecution evidence would disappear in law.

■ Section 178 *supra* as well as Rule 111 of 1963 provide that questions *of fact* shall be tried by jury. Indeed, the judge was bound, as correctly alleged by the Solicitor General and according to the prevailing norm, to decide on the admission or not of this evidence and to make his own findings of fact as to all those facts aimed at determining the circumstances of the arrest and seizure without a warrant. Under those circumstances in which the jury is bound to determine whether or not certain acts which violated the ordinance were committed and to find appellant guilty or not of this offense, and in which the elements of fact which are ingredients of the incident on admissibility of the evidence are actually elements of fact of defense, the jury is bound to determine ultimately, on proper instructions by the judge, whether or not to take into consideration the evidence admitted, contrary to the instruction given to the effect that they could not dispense with it (Tr. Ev. 89).[10] To do otherwise, as stated in *People* v. *Meléndrez, supra,* would be tantamount to saying to the jury, on the basis of the evidence heard by them, that appellant had actually committed the offense of violation of the ordinance. .

---

[10] The situation is somewhat similar to the rule followed in this jurisdiction in the case of confessions where, although it is the duty of the judge, as a question of law, to admit or not a confession in evidence, if he admits it on the basis of controverted facts as to its voluntariness, the jury is bound to pass upon those facts, and even if it is admitted, not to take it into consideration if it concludes that the facts render it involuntary. As in the case also of a confession in which the burden is on the prosecution to show voluntariness, the courts of California, whose positive law is the same as ours, have well settled that a defendant makes a prima facie case when he establishes that an illegal arrest or search or without probable cause was made without a warrant, and the burden then rests on the prosecution to show justification for the arrest. *Badillo* v. *Superior Court,* 46 C.2d 269; *People* v. *Ferrara,* 46 C.2d 265; *People* v. *Robinson,* 333 P.2d 120; *People* v. *Carswell,* 308 P.2d 852 (Cal.); *People* v. *Silvestri, supra* at 874; *People* v. *Holguin,* 302 P.2d 635, 637 (Cal.).

For the reasons stated, since the judgment for violation of the ordinance of the Capital will be reversed, the judgments in the other cases will accordingly be vacated. All the cases will be remanded for retrial in consonance with the holding herein.