[Crim. No. 9608.    Second Dist., Div. Two.    Mar. 11, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. RALPH
MARTINEZ, JR., Defendant and Appellant.

Morris Lavine for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and George J. Roth, Deputy Attorney General, for Plaintiff and Respondent.

FLEMING, J.—Defendant was convicted of possession of heroin for sale (Health & Saf. Code, § 11500.5) with two prior felony convictions of possession of narcotics (Health & Saf. Code, § 11500). On appeal defendant charges the use of evidence obtained by illegal search and seizure, and insufficiency of the evidence to support the verdict.

During February 1963, Los Angeles police officers received information from several informers, two of whom were reliable, that the defendant was selling heroin. This information was corroborated in part by subsequent personal observations and investigations of the police. Armed with this information, eight officers on the night of February 23, 1963, proceeded to the vicinity of defendant's house and staked out the area about 7 p.m. Defendant's house was a two-story structure to the rear of a larger front house occupied by his landlord. On one side of these houses a private driveway slanted up and led back to an open shed-type garage not connected with either of the houses. Attached to defendant's house was a small washroom. Several officers hid behind the garage, while the rest stayed half a block down the street.

About 9:30 or 10 p.m. defendant drove up the driveway, parked in the garage, entered the rear house, and then returned and re-entered his car. At that moment two officers approached the car, shone a floodlight upon defendant, and jerked the car door open. Defendant threw himself to the opposite side of the car with his head down, placed both hands at his face, and appeared to be putting something in his mouth. As he was being pulled from the car, he kept his hands to his face, and while being handcuffed, he was chewing and swallowing.

Several officers went to the rear house where Otillia Johnson, who lived with the defendant, was standing in the doorway. After the officers identified themselves they asked if defendant lived there, and when she said he did, they then walked past her into the house. Around the kitchen sink they found a pyrex plate, a razor blade, a measuring spoon, a can of milk sugar, and a small portion of powder containing a quarter of a grain of heroin. On finding this material the officers questioned the defendant and as a result of information given them then conducted a search of the washroom, which produced five condoms containing over 3 ounces of heroin.

While these events were taking place, other officers entered the front house where the landlord resided and searched his premises without his consent. Several outbuildings—a workshop attached to the front house, a storage shed attached to the garage, and a small house in the rear of defendant's house —were also searched, one of them by forcible entry. These searches produced no contraband.

A short time after the heroin was found in the washroom, defendant told an officer he had swallowed a quarter ounce of heroin. Asked if he were using enough so it wouldn't bother him, defendant said, ''No, I feel like I am going on a nod now.'' (Passing out as a result of too much heroin.) On being told he could be taken to the hospital and could get the stuff back up, defendant said, ''Yes, I would like to go to the hospital, go to the doctor and get this out.'' He was taken to the hospital where he drank a saline solution which made him throw up.

After the hospital, defendant was taken to the police administration building for questioning, approximately midnight according to the police, closer to 1 a.m. according to defendant. During this questioning defendant told the police he had approximately 2½ ounces of heroin in the condoms which was uncut. He had been selling heroin for approximately one month, pieces for $145 and quarters for $45. A piece is an ounce, and a quarter is a quarter ounce. The paraphernalia in the kitchen belonged to him, defendant said, and was used to cut the heroin prior to sale.

In his defense defendant denied selling narcotics and denied making movements with his hands prior to his arrest. He testified that during the search of his house he was taken into the bedroom by officers and hit about 25 times with the back of a flashlight in the stomach and threatened with being blown up with a hand grenade. He said he drank the saline

solution at the hospital because the police told him that if he didn't drink it they would take him out and put a bullet through his head and make it look as though he were trying to escape.

1) *Arrest and Search*

The defendant was arrested and his house searched without an arrest or search warrant. ■ However, an arrest without a warrant is valid whenever it is founded on a reasonable belief that the person to be arrested has committed a felony. (Pen. Code, § 836; *People* v. *Ingle,* 53 Cal.2d 407, 412, 413 [2 Cal.Rptr. 14, 348 P.2d 577].) ■ Information from a reliable informer, plus corroboration by the personal observations of the police, are more than sufficient grounds to believe a felony has been committed and thus justify an arrest without a warrant. (*Willson* v. *Superior Court,* 46 Cal.2d 291 [294 P.2d 36]; *People* v. *Prewitt,* 52 Cal.2d 330 [341 P.2d 1].) In this case the police had reasonable cause to make an arrest. (*People* v. *Blodgett,* 46 Cal.2d 114 [293 P.2d 57]; *People* v. *Crowley,* 193 Cal.App.2d 310 [14 Cal.Rptr. 112].)

A search incident to a valid arrest is also valid. (*Ker* v. *California,* 374 U.S. 23, 41-43 [83 S.Ct. 1623, 10 L.Ed.2d 726], *In re Sterling,* *(232 Cal.App.) [42 Cal.Rptr. 519].) But whether the subsequent search of the house was incident to the arrest must be considered in the light of *People* v. *Cruz,* 61 Cal.2d 861 [40 Cal.Rptr. 841, 395 P.2d 889]. In *Cruz,* the defendant at the time of his arrest was parked in a car on a public street a few feet south of an apartment in which the police had reason to suspect he kept narcotics. The court held the subsequent search of the apartment was not incident to the arrest of the defendant in the car. ". . . it is manifest that at the time of the arrest in the case at bench the automobile in which defendant was apprehended was the only 'premises [property] under his immediate control' within the meaning of this rule. Even a house owned or rented by the person subsequently charged cannot be searched without a warrant 'except as an incident to a lawful arrest *therein*' [citations]; . . . it is also true that the closer the arrest is to the premises, the more arbitrary this rule may tend to appear. . . . The rule itself is sound, and, above all, workable. [citation] . . . To abide by the rule ourselves (and to clarify

*Reporter's Note: A hearing was granted by the Supreme Court on March 31, 1965, and the matter was retransferred to the District Court of Appeal, Second Appellate District, Division Two. Another opinion was filed June 22, 1965.

it for those who must work under it in the field) we are constrained to hold that a search is not 'incidental to an arrest' unless it is limited to the premises where the arrest is made. . . .'' (Italics added.)

■ Although this case is factually distinguishable from the *Cruz* case in that defendant had gone in and out of the house immediately prior to his arrest in the automobile, and had been arrested on private grounds and not on a public street, nevertheless, it appears to us the California Supreme Court has drawn a rather definitive line which constrains us to hold that at the time of the arrest only the car, the person of the defendant, and the garage were under his immediate control. Therefore, any evidence found in the search of the house and washroom was illegally seized and improperly admitted in evidence. (*People* v. *Cruz*, 61 Cal.2d 861, 865-866 [40 Cal.Rptr. 841, 395 P.2d 889].)

2) *Sufficiency of Evidence*

■ Is there sufficient other evidence in the record to support the judgment? We do not believe so. Other evidence which might have been introduced to prove the elements of the crime charged, such as the contents of defendant's stomach, was not tendered, either because narcotics were not found in the defendant's stomach, or because the prosecution decided not to use this evidence for tactical reasons.

■ The defendant did make statements to the effect that he had been selling heroin for a month and charging $145 an ounce. But these statements were made at the police administration building in response to questioning two or three hours after his arrest. At that time there was little doubt the police planned to charge defendant with a crime, and hence their questioning was accusatory within the sense of *Escobedo* v. *Illinois*, 378 U.S. 478, 492 [84 S.Ct. 1758, 12 L.Ed.2d 977]. So far as the record indicates, the defendant was not advised of his right to counsel or his right to remain silent. When an investigation has focused on a particular suspect who is in custody and is the subject of an accusatory interrogation, then he must be advised of his constitutional rights before questioning. (*People* v. *Dorado*, 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361].) Since there was no showing he was so advised, these statements must be excluded. (*People* v. *Peckham, ante,* p. 163 [42 Cal.Rptr. 673].) ■ The remaining evidence is not sufficient to support the judgment.

■ Defendant's motion to challenge the trial judge under Code of Civil Procedure, section 170.6, was properly denied

because not timely made, i.e., at least five days before trial when the judge scheduled to try the case was known 10 days before the trial date. (*People* v. *Roerman,* 189 Cal.App.2d 150 [10 Cal.Rptr. 870].)

The purported appeal from the order denying the motion for a new trial and from the order denying the motion to set aside the judgment is dismissed.

Judgment reversed.

Roth, P. J., and Herndon, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied May 12, 1965. McComb, J., and Burke, J., were of the opinion that the petition should be granted.