[Crim. No. 10103. Second Dist., Div. Four. Feb. 17, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. HENRY PALOS CHAVEZ, Defendant and Appellant.

Robert M. Ebiner, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Bradley A. Stoutt, Deputy Attorney General, for Plaintiff and Respondent.

FILES, P. J.—Defendant Chavez and codefendant Herrera were charged with the sale and furnishing of heroin (Health & Saf. Code, § 11501).

After a jury trial defendant Chavez was found guilty and Herrera was found not guilty. Criminal proceedings were then adjourned so that a civil proceeding might be undertaken for Chavez' commitment as an addict under Penal Code section 6451 (now Welf. & Inst. Code, § 3051). Sometime later criminal proceedings were reinstated and he was sentenced to state prison for the term prescribed by law, from which judgment he appeals.

The contentions made by appellant are (1) that the evidence is insufficient as a matter of law and (2) that the use in evidence of statements which he made after his arrest now entitle him to a reversal under the authority of *Escobedo* v. *Illinois*, 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977], and

*People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361].

## The Evidence

The evidence and inferences therefrom which support the judgment require only a brief statement. On May 1, 1963, a state narcotic agent, Antonio Cota, Jr., conducting an undercover investigation and using the name of "Manuel," was introduced to Herrera in a bar. The following morning Herrera introduced "Manuel" to Chavez. The latter told Cota he could deliver some heroin at 4 o'clock, the price " 'shouldn't be much over two seventy-five. . . .' " and that the stuff was good enough that you could make another ounce out of it by adding an ounce of sugar. Sometime after 4 p.m. the three men again met. Herrera and Chavez instructed Cota to park his car at a designated location in Monterey Park. At this meeting point Herrera approached Cota's vehicle on foot while Chavez remained in the background. Herrera spoke with Cota, then conferred with Chavez, spoke again with Cota, and went back to Chavez once more before he delivered to Cota a package of white powder, for which Cota gave $290. Laboratory analysis later established that the powder weighed 22.3 grams and contained heroin.

On May 8 Cota again met Chavez and said he wanted to buy an ounce of heroin. Chavez said he thought he could supply it and then asked " 'How was the stuff we gave you the other day?' " Cota complained about the quality and the price. Chavez stated that he would let Cota have an ounce for $250 and the quality would be better. On May 9 the three met again. When Chavez said he could not make delivery until later, Cota identified himself and placed both Chavez and Herrera under arrest.

Herrera's defense to this charge was entrapment. He did not deny that the transaction had taken place. He testified that he had assisted Cota to find some heroin only because he had been importuned to do so by a friend whom he had met in jail. Chavez, testifying in his own defense, admitted that he had accompanied the other two men in a search for heroin on May 2, but denied that he had furnished heroin to anyone or received any money on that day.

Evidently the jurors believed Herrera's testimony, or at least gave him the benefit of a reasonable doubt, for they acquitted him. But the jury did not believe Chavez. ■ It

was the function of the jury to determine the factual issues, and this court must assume in favor of the verdict the existence of every fact which the jury could reasonably have deduced from the evidence. (*People* v. *Newland*, 15 Cal.2d 678, 681 [104 P.2d 778].)

By this standard the evidence is clearly sufficient. From Cota's testimony as to what Chavez said and did before and after the May 2 transaction, the jury could reasonably infer that Chavez was the real seller and that Herrera was a mere go-between. This is so even though there is no direct evidence that Chavez had possessed the heroin or that he received the consideration.

*People* v. *Martinez*, 232 Cal.App.2d 796 [43 Cal.Rptr. 197], cited by appellant, is not in point. In that case, where the charge was possession of heroin for sale, the evidence of possession was obtained by an unlawful search, and therefore was inadmissible. Without the illegally obtained evidence the prosecution had no corpus delicti. No comparable defect appears in the case at bench.

### The Escobedo-Dorado Problem

The record contains the following testimony of Agent Cota as to a statement which Chavez made immediately following the arrest:

"Defendant Chavez, upon being placed under arrest, stated to me, 'Manuel, I want to talk to you. Look,' he said, 'I can take you to the connection. I want to help you. I can take you in, introduce you to him and you can get him right.'

"At this time I asked Chavez, 'How much stuff does he have?'

"And he said, 'I think he's got about seven or eight pieces.'

"I said, 'Where are they?'

"And he said, 'If you let me go in there, I'll find out where they are and you can get him.'

"I told him, 'No. I don't trust you. We are going to do it by ourselves.'

"At this time I, I asked him, 'If he is the connection, how about the guy over there on East Olympic?'

"And he said, 'Oh, that was Joe Martinez.'

"I said, 'I thought you said you had gotten the stuff from him the other day?'

"And he says, 'No. I got it from Joe Trujillo who lives over here on Siskiyou, but Joe Trujillo was over at Joe Martinez' house on East Olympic.'

"At this time he again stated, 'Let me go with you. I will introduce you to the man, and you can get it right. You can make a buy from him.'

"And at this time I again, I told him, 'No. I'll do it by myself.' "

Chavez requested that Cota visit him after he was booked. About 11 o'clock that evening while Cota was in his office he received a call to come to the jail. There they had a further conversation which is described in Cota's testimony.

"Q. By Mr. Gustafson: Would you tell us what was said relative to the charge now before the Court?

"A. Yes. At this time he began he stated, 'The stuff I gave to you the other day,' or 'The stuff that you got the other day, I got it from Joe Trujillo, and he was over at Joe Martinez' house over on East Olympic.'

"At this time I asked him, 'Well, how much money—— how much money did you have at the house?'

"And he said, 'Oh, about $300.00.'

"At this time I told the defendant that we had seized that money and that it would be turned over to the Federal Government, the Internal Revenue Service, if we were unable to locate any of our own money among that. At this time——"

[At this point there was an objection wich was overruled.]

"The Witness: At this time I asked the defendant Chavez, 'What did you want to talk to us about?'

"And he said, 'Well, I want to help myself. I can help you clean up the East Side. I know a lot of people, and I know a lot of big people.'

"At this time I asked the defendant, 'Well, who do you know?'

"And he said, 'I know some big connections, and I can take you to them and dupe you in, and you can make buys from them.'

"I asked the defendant, 'Well, be more specific. Give me some names. Give me some locations.'

"And he said, 'Well, I'll do that when I get out. Get me some low bail.'

"I told the defendant, 'No. I will try and do whatever I can, but it is up to you. If you want to help yourself after you get on the street, you know where to contact me. If you are sincere and want to help yourself.'

"I believe that was the substance of it."

In *People* v. *Dorado,* 62 Cal.2d 338, 353-354 [42 Cal.Rptr. 169, 398 P.2d 361], the court summarized its decision in these

words: "We conclude, then, that defendant's confession could not properly be introduced into evidence because (1) the investigation was no longer a general inquiry into an unsolved crime but had begun to focus on a particular suspect, (2) the suspect was in custody, (3) the authorities had carried out a process of interrogations that lent itself to eliciting incriminating statements, (4) the authorities had not effectively informed defendant of his right to counsel or of his absolute right to remain silent, and no evidence establishes that he had waived these rights."

In the present case suspicion had focused, appellant was in custody, and there is no showing that he had been advised of his rights. ■ But a conversation between an officer and a prisoner is not invariably "a process of interrogations that [lends] itself to eliciting incriminating statements." The issue is not resolved by the fact that the statements made by the prisoner are incriminating. In order to determine whether there was such a "process," it is necessary to ". . . analyze the total situation which envelops the questioning by considering such factors as the length of the interrogation, the place and time of the interrogation, the nature of the questions, the conduct of the police and all other relevant circumstances." (*People* v. *Stewart,* 62 Cal.2d 571, 579 [43 Cal. Rptr. 201, 400 P.2d 97].)

■ From the present record it appears that both conversations were initiated by Chavez, for the apparent purpose of persuading the authorities to release him to serve as an informer. Cota had no motive then to elicit incriminating statements, for he was already in a position to testify to statements which, if believed by the jury, would result in a conviction. Cota's questioning was brief, and was limited to Chavez' offer to act as an informer. This is not a case like *People* v. *Chaney,* 63 Cal.2d 767 [48 Cal.Rptr. 188, 408 P.2d 964], where an unsolicited statement by the defendant was followed by police interrogation which was designed to incriminate. In the case at bench, when it became apparent that Chavez was not ready to give names, Cota terminated the interviews. We do not believe that Cota violated appellant's constitutional rights by participating in the two brief conversations which appellant initiated. The questions asked by Cota cannot be characterized as a "process of interrogations that lent itself to eliciting incriminating statements." (Cf. *People* v. *Justiniano,* 236 Cal.App.2d 542 [46 Cal.Rptr.

335] ; *People* v. *Brooks,* 234 Cal.App.2d 662, 670 [44 Cal. Rptr. 661].)

The judgment is affirmed.

Jefferson, J., and Kingsley, J., concurred.

A petition for a rehearing was denied March 15, 1966, and appellant's petition for a hearing by the Supreme Court was denied May 11, 1966.